543 So.2d 1268 (1989)
E.C. GOLDMAN, INC., Appellant,
v.
A/R/C ASSOCIATES, INC., etc., et al., Appellees.
No. 87-1258.
District Court of Appeal of Florida, Fifth District.
May 4, 1989.
Rehearing Denied June 9, 1989.
Harry W. Lawrence of Austin, Lawrence & Landis, Orlando, and Stephen M. Phillips and Dudley C. Rochelle, Atlanta, Ga., for appellant.
John C. Briggs of Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, P.A., Orlando, for appellees.
ORFINGER, Judge.
E.C. Goldman, Inc. (Goldman) appeals from a final judgment on the pleadings in favor of the defendants, A/R/C Associates, Inc. (A/R/C) and Donald Dorner (Dorner). The sole issue presented on appeal is whether an expert who has had no connection whatsoever with a construction project and is hired by the owner of the project solely to evaluate the work of a roofing subcontractor, may be held liable to the subcontractor (with whom the expert has no privity) for the negligent performance of its evaluation. We agree that there is no liability under the circumstances here, and affirm.
In entering judgment on the pleadings, the trial judge correctly accepted as true all well pleaded allegations of Goldman's complaint. See McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976); Geer v. Bennett, 237 So.2d 311 (Fla. 4th DCA 1970). A brief summary of the facts which crystallize the issue here follows.
Roger Kennedy (Kennedy), a contractor, entered into a contract with the School Board of Flagler County to build a school. Kennedy hired Goldman, a roofing subcontractor, to install a built-up roof. Goldman installed the roof in accordance with the contract specifications. The roof construction was periodically observed by the school board's clerk, the project architect and superintendent and Kennedy's project manager. Deficiencies in the roof were not observed at the time. Several months later the School Board raised complaints about the roof and on behalf of the School Board, the architect retained a nationally-known roof consulting firm, Robert M. Stafford, Inc., to examine the roof. Meanwhile, payment was withheld from the contractor, who in turn withheld payment from Goldman. Based on this consultant's roof inspection, the architect reported to the School Board that the roof was in good condition, and subsequently recommended that the School Board accept the project, *1269 including the roof, and that the contractor be paid. Nevertheless, the issue of final payment was left unresolved pending the report and recommendations of a second roof consultant retained by the Board to conduct an additional roof inspection.
A/R/C, a roof consultant, was then engaged for the purpose of inspecting the roof and advising the school board as to whether it should be accepted. After conducting a roof investigation for A/R/C, Donald Dorner concluded that the architect and the School Board should not accept the roof. Based on A/R/C's written report and Dorner's verbal report, the Board decided not to accept the roof. Accordingly, it withheld payment to Kennedy, of which Goldman was owed $20,261.28. About one month later, Dorner performed another roof inspection and A/R/C prepared and sent a second written report in the form of a letter to the architect. Based on this report and a presentation to the Board, the Board again declined to accept the roof and continued to withhold payment.
Kennedy then initiated arbitration proceedings to collect the contract balance. Goldman was required to engage legal counsel and retain roofing experts in order to defend himself against the allegations of improper workmanship and to obtain the balance due under his subcontract with Kennedy. After a full evidentiary hearing, the arbitration panel unanimously determined that Goldman had performed the subcontract in accordance with the original contract specifications, and Goldman was awarded a total of $31,819.77, consisting of a subcontract balance of $20,261.28, test costs of $4,852.64 and interest of $6,705.85.
Goldman then filed this action alleging that A/R/C and Dorner owed a duty to those persons, such as himself, who would foreseeably be harmed by their failure to exercise due diligence and reasonable care in performing their contractual obligations to the school board. He also alleged that A/R/C and Dorner knew that the school board's acceptance of the roof was contingent upon their investigatory findings and recommendations. He finally alleged that as a direct and proximate result of A/R/C's and Dorner's negligence in performing their contractual duties, he had sustained damages in the amount of $40,893.83. This amount consisted of those costs and expenses, including reasonable attorney's fees, which he incurred in arbitrating the foregoing claim. He also alleged that he had been damaged by failing to obtain additional work. Goldman sought a judgment against A/R/C and Dorner for these claimed losses and for damages to compensate him for the loss of business and damage to its reputation.
In its final judgment, the trial court held as a matter of law that:
1. No contractual privity exists between the Plaintiff and the Defendants. Therefore, the Defendants had no duty of care to the Plaintiff.
2. The Defendants owed a duty of reasonable care in the performance of their consulting services to the School Board of Flagler County, in that the Defendants were hired for that specific purpose by the School Board's architect. This precluded the existence of a duty flowing from the Defendants to any other parties, including the Plaintiff.
3. The Plaintiff did not rely to its detriment on the opinion rendered to the School Board of Flagler County by the Defendants, thereby precluding the existence of any duty from the Defendants to the Plaintiff even in the absence of contractual privity.
4. Public policy also dictates against the existence of a duty from the Defendants to the Plaintiff, which would give rise to the pleaded cause of action for negligent rendition of an expert opinion, in that the recognition of any such cause of action would make the practice of this or any similar consulting profession a financial hazard and would inject such self-protective reservations into the expert's consulting or advisory role so as to diminish the quality of the expert's services.
5. The Plaintiff therefore has no cause of action against these Defendants for any negligence which may have occurred in the rendition of their opinion pursuant *1270 to their retention for that purpose by the School Board of Flagler County.
Appellant, (as does the dissent) relies principally on A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973) and its progeny as support for its position that liability can exist here notwithstanding the absence of privity between A/R/C and Goldman. Essentially, it is the position of the appellant that the foreseeability of economic damage to Goldman created a duty on the part of A/R/C to use due care in the preparation of its report, failing which Goldman has a cause of action against A/R/C. Both appellant and the dissent misconstrue and thus misapply Moyer and the other cases cited in the dissent to the facts here. To agree with appellant it would be necessary to hold that a professional hired to give an expert opinion to his client owes a duty of due care to a third party, not in privity with the contract, not an intended beneficiary of the contract nor a person who is expected by the professional to rely on his opinion. That is not the law, nor have we been cited to a single case that supports that proposition.
In Moyer, the court approved a cause of action for an injury to a third party's economic interests by the negligent performance of a contract.[1]Moyer did not develop new legal principles, but extended products liability law to economic losses. The cases relied on by the Moyer court to support its holding were products liability cases, in all of which the defendants had a close nexus to the product which caused the injury and loss to the plaintiffs, either through design, manufacture or distribution of the product or the direct supervision of its construction.[2]Moyer is still good law, but a careful reading of the case and the factual context in which it was decided clearly reveals that it does not apply here.[3]
In Moyer the owner entered into a contract with the defendant architects who were to prepare plans and specifications for the construction of an apartment building and who were to supervise the plaintiff general contractor in building the project in accordance with defendants' plans. The plans were alleged to have been negligently prepared and then negligently corrected by the defendant architects. Defendants also were alleged to have negligently caused delays and to have negligently exercised control and supervision over the plaintiff. In Moyer, unlike the case before us, there was an extremely close nexus between the general contractor and the architect; indeed, the supreme court agreed with the statement in United States v. Rogers & Rogers, 161 F. Supp. 132 (S.D.Calif *1271 1958) that a supervising architect has the "power of economic life or death" over the general contractor and that such a great degree of control should also carry with it a duty of due care to the general contractor. As the Moyer court noted, "such authority exercised in such a relationship [should] carry commensurate legal responsibility." 285 So.2d at 401.[4] In AFM Corp. v. Southern Bell Telephone and Telegraph Company, 515 So.2d 180, 181 (Fla. 1987) the court explained the Moyer decision as being based "on the fact that the supervisory responsibilities vested in the architect carried with it a concurrent duty not to injure foreseeable parties not beneficiaries of the contract." In the instant case, not only is there no nexus between plaintiffs and the school board's consultant, there is no proximate cause. Plaintiffs were not harmed by the consultant's opinion, but rather by the school board's refusal to pay based on the opinion. There is nothing in the record to indicate that the school board was bound by the consultant's report,[5] or that the plaintiffs relied on or were intended to be influenced by the consultant's report.
The factual posture of the instant case sets it apart from Moyer and the other cases relied on by appellant and the dissent. In those cases there was a direct nexus between the defendant and the "product" which caused the injury or economic loss. Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc., 406 So.2d 515 (Fla. 4th DCA 1981), rev. denied, 417 So.2d 328 (Fla. 1982) was an action by purchasers of condominium units against the developer of the condominium for negligent construction. Parliament Towers Condominium v. Parliament House Realty, Inc., 377 So.2d 976 (Fla. 4th DCA 1979) was also an action by purchasers against the developers, and the architect as well, of the condominium units. Navajo Circle, Inc. v. Development Concepts Corp., 373 So.2d 689 (Fla.2d DCA 1979) was an action by purchasers of condominium units against the architect for negligent supervision of construction and subsequent repairs to the roof of building, and against the contractor for negligent construction. In Luciani v. High, 372 So.2d 530 (Fla. 4th DCA 1979), the defendant was an engineer retained by the contractor to do soil tests on the property prior to construction, and it was alleged that he negligently performed these tests, thus causing damage to the owner's property.[6]Sub judice the defendant *1272 expert was outside the "chain of construction." He had nothing to do with the design or construction of the roof, and was only hired to render an opinion to the school board as to the condition of the roof built by plaintiff. His opinion was not, obviously, relied on by plaintiff nor was it intended to be relied on by or influence the plaintiff.[7]
The abstractor and attorney cases, cited by appellant as evincing the further erosion of the privity requirement in negligence actions, are not decided on tort principles but on contract principles, and are consistent with what we believe to be the correct analysis of the instant case. In First American Title Insurance Company, Inc. v. First Title Service Company of the Florida Keys Inc., 457 So.2d 467 (Fla. 1984) the supreme court receded somewhat from the strict requirement of privity between an abstractor and the person injured by the negligent preparation of the abstract, applying third party beneficiary principles, and holding that an abstractor is liable to purchasers whose reliance on the abstract was known or should have been known to the abstractor, regardless of privity. Liability was limited, however, to parties to the transaction for which the abstract was prepared. The court declined to recognize an abstractor's liability "to any and all foreseeable injured parties," a theory advanced by the appellants based on Moyer, explaining that Moyer involved direct supervisory responsibility by the architect for the construction project and direct control over the contractor.
We also believe that petitioner's argument based on A.R. Moyer, Inc. v. Graham is unpersuasive. Where a contractor is totally dependent on the plans and specifications prepared and supplied by an architect or engineer with supervisory authority over a project, the contractor is unable to take steps independently to protect itself against the consequences of the negligence of the architect or engineer. Although Moyer applied products-liability tort principles to negligent provision of professional services, we find a vast difference between that situation and this one. Here there is far less compelling reason to make such an application.
457 So.2d at 471-472.
The supreme court has limited an attorney's liability for negligence in the performance of a professional duty to the client with whom the attorney shares privity of contract. In Angel, Cohen and Rogovin v. Oberon Investment, N.V., 512 So.2d 192 (Fla. 1987) the supreme court refused to relax the rule of privity in actions against attorneys for negligence in the performance of their professional duties. The court noted that lack of privity will not *1273 defeat liability where the attorney's negligence has injured an intended third party beneficiary of the contract with the client, as in the area of will drafting. See, e.g., McAbee v. Edwards, supra. The rule of law in attorney negligence actions that there be privity between the attorney and the plaintiff or that the plaintiff be an intended third party beneficiary of the contract with the attorney espouses the principle applicable in the case before us here. The expert's duty in this case was to its client, as was the attorney's in Angel, Cohen and Rogovin, supra. Clearly, Goldman was not an intended third party beneficiary of the contract between A/R/C and the School Board, so as to fall within the exception to the rule of that case.
Because plaintiff and defendants were not in privity of contract and because plaintiff was not the intended beneficiary of the consulting contract between the school board and defendants, and because there was no reliance by plaintiff or any intention that plaintiff rely on the expert's report, defendants had no duty to plaintiff and thus were not liable for any negligence in preparing their report. Product liability principles are not applicable here because plaintiff was not injured by use of any "product" designed, constructed or distributed by the defendants. The trial court correctly entered judgment for the appellee.
AFFIRMED.
SHARP, C.J., concurs.
DANIEL, J., dissents with opinion.
DANIEL, Judge, dissenting.
I respectfully dissent for two reasons. First, the trial court and majority opinion fail to apply the proper standard of review of a judgment on the pleadings. Second, I believe that a contractor or subcontractor, as an intended third party beneficiary, has a cause of action against a construction consultant for the negligent performance of its consulting services.
Since the final judgment was based solely on the pleadings, all of the material factual averments contained in Goldman's complaint must be taken to be true. Williams v. Howard, 329 So.2d 277 (Fla. 1976); McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976); Geer v. Bennett, 237 So.2d 311 (Fla. 4th DCA 1970). Thus it must be taken as true that the defendants were negligent in performing roof consulting services on the project and that Goldman sustained damages as the direct and proximate result of their negligence. It must be further taken as true that, while conducting the roof investigation and performing consulting services, the defendants knew that Goldman was the roofing contractor on the project and that a finding critical of Goldman's work would have severe adverse consequences to him resulting in nonacceptance of the roof and nonpayment for services rendered by Goldman to the school board on the contract.
Instead of taking these well-pled allegations as true, the majority bases its opinion in part on the fact that "plaintiff was not the intended beneficiary of the consulting contract ... and because there was no reliance by plaintiff or any intention that plaintiff rely on the expert's report... ." This is contradictory to the following paragraphs of the amended complaint:
33.
At the time A/R/C and Dorner undertook their initial investigation of the Belle Terre roof in September 1982, they knew that the School Board had under consideration the question of whether to accept the roof and make final payment to Kennedy and that they had been retained to advise the School Board on the issues of acceptance and payment.
34.
At the time of their further investigation, later in the fall of 1982, A/R/C and Dorner knew the roof had not been accepted by the School Board, that payment to the Contractor had been withheld, and that A/R/C's report would be used in determining whether the School Board should continue to not accept the roof and withhold payment.

*1274 35.
A/R/C and Dorner, as roof consultants in the construction industry, were thoroughly familiar with the system of final payment procedures on construction jobs: acceptance by the architect and owner, final payment to the general contractor, and payment in turn by the general contractor to its subcontractors.
36.
At the time of their investigations, A/R/C and Dorner knew that Goldman had installed the roof at the Project and that a recommendation of nonacceptance of the roof based upon an allegation by them of defective workmanship in installation of the roof would cause injury to Goldman, causing Goldman not to receive payment and forcing Goldman to go to the expense of proving that Goldman had installed the roof in a good and workmanlike manner in accordance with the applicable plans and specifications and proving that Goldman's workmanship was not the cause of blistering at the Project.
37.
A/R/C and Dorner negligently made comments and reports pertaining to Goldman's workmanship in installing the roof at the Project which were not based on fact and were misleading and which adversely reflected upon and impacted Goldman.
38.
A/R/C and Dorner owed a duty to Goldman, as one who could foreseeably be harmed by their investigations, comments, reports and recommendations, to use reasonable care in the performance of their contractual obligations as roof consultants at the Project.
On the law, Goldman contends that the trial court erred in basing its decision on the lack of privity existing between the defendants and himself. In support of his position, Goldman relies primarily on A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973).
In Moyer, the United States Court of Appeals for the Fifth Circuit certified several questions to the Florida Supreme Court dealing specifically with the issue of whether a general contractor on a construction project could maintain a direct action against the architect or engineer for damages proximately caused by the negligence of the architect or engineer where there was an absence of privity of contract between the parties. In that case the architect contended, as does A/R/C here, that as a professional his liability extended only to those with whom he was in privity. The Florida Supreme Court held that a cause of action existed notwithstanding lack of privity between the general contractor and the architect and engineer, explaining as follows:
Privity is a theoretical device of the common law that recognizes limitation of liability commensurate with compensation for contractual acceptance of risk. The sharpness of its contours blurs when brought into contact with modern concepts of tort liability. MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), is heralded not so much for its decision on the facts as for its precedential value: a case relaxing privity's strictures. In Matthews v. Lawnlite Co., [88 So.2d 299 (Fla. 1956)], the Court recognized MacPherson as humane and accepted its principle as being more in line with reason and justice.
The Audlane [Audlane Lumber & Builders Supply v. D.E. Britt, 168 So.2d 333 (Fla. 2nd DCA 1964)] case, decided by the District Court of Appeal, was a natural extension of the Matthews case. Britt, an architect, designed plans and specifications for roof trusses and sold them to Anchor Lock; in turn, Anchor Lock manufactured truss plates and then sold the plans, specifications and plates to Audlane; Audlane then constructed trusses according to Britt's design, using Anchor Lock's plates. A contractor purchased the completed trusses from Audlane and used them in construction. The trusses failed and Audlane sustained considerable economic loss as a result.

*1275 Thereafter, Audlane brought suit against Britt for negligent preparation of the truss plans and specifications, but it was dismissed for failure to state a cause of action. In reversing the dismissal, the District Court reasoned:
With respect to the negligence action and appellee Britt Associates' "duty", there is no magic in the generality "professional" service. The phrase "professional services" encompasses a multitude of activities which may give rise to actions on numerous theories of liability. The nature of the professional's duty, the standard of care imposed, varies in different circumstances. So, too, the extent of the duty, the delimitation of the objects of the duty, varies. In every instance duty must be defined in terms of the circumstances and the theories advanced to sustain liability. In our view the extent of appellee's duty may best be defined by reference to the foreseeability of injury consequent upon breach of that duty. The complaint alleged that appellee knew that the design and specifications it prepared would be resold to and used by various fabricators. To argue that it is absolutely free of liability for negligence to these known users or consumers of its work is to disregard the half century of development in negligence law popularly thought to have originated in MacPherson v. Buick Motor Co., 17 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (1916) and explicitly recognized in this State in Matthews v. Lawnlite Co., (Fla. 1956), 88 So.2d 299. The allegations of the complaint bring appellant within the ambit of Britt Associates' duty and the court erred in its contrary determination." (emphasis in original)
285 So.2d at 399-400. The court in Moyer went on to state:
[W]e are satisfied that the principle is established that a third party general contractor, who may foreseeably be injured or sustained an economic loss proximately cause by the negligent performance of a contractual duty of an architect, has a cause of action against the alleged negligent architect, notwithstanding absence of privity. (emphasis supplied)
285 So.2d at 402.
The majority attempts to distinguish Moyer, arguing that it depended upon "products liability principles." Similarly the architect in Moyer also attempted to distinguish the Audlane case on the basis that it involved personal injury and was seen as deriving from "products liability." 285 So.2d at 399. The Moyer court rejected that distinction then, thus I see no reason to dignify it now.
Following Moyer, there have been a number of appellate decisions affirming foreseeability of injury and closeness of relationship between the parties rather than privity of contract as the criteria to be applied in determining whether a third party can maintain an action against the defendant based upon the defendant's negligent performance of a duty arising out of contractual obligation.
For example, in Luciani v. High, 372 So.2d 530 (Fla. 4th DCA 1979), a case very similar to the present case, Luciani appealed from a final judgment in favor of appellee Riddle. Luciani's complaint charged that Riddle, an engineer, was employed by the contractor constructing Luciani's home to do testing on the land on which the home was to be built and that Riddle negligently performed the test resulting in damages to Luciani's home. Riddle moved for a judgment on the pleadings arguing that Luciani had no privity of contract with Riddle and that such privity was necessary to support Luciani's claim against Riddle. The motion for judgment on the pleadings (as here) was granted and the final judgment entered thereon.
On appeal, the court reviewed the final judgment, explaining as follows:
It seems to us the theory alleged in the complaint against Riddle is one for economic loss proximately caused by the negligent performance of a contractual duty. Riddle is charged with negligently performing the test on the land upon *1276 which the residence was to be built. The mere fact that Riddle was employed by the contractor rather than the owner to perform the necessary testing does not absolve him from liability to the owner for negligent testing resulting in damage to the owner. Riddle is liable not only to one in privity with him but also to those third persons who might foreseeably be injured as a result of his negligence. (emphasis supplied). Audlane Lumber & Builders Supply, Inc. v. D.E. Britt Associates, Inc., 168 So.2d 333 (Fla. 2d DCA 1964); A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973). Thus, it was error to grant the motion for judgment on the pleadings.
372 So.2d at 531. See also Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc., 406 So.2d 515 (Fla. 4th DCA 1981); Parliament Towers Condominium v. Parliament House Realty, Inc., 377 So.2d 976 (Fla. 4th DCA 1979); Navajo Circle, Inc. v. Development Concepts Corporation, 373 So.2d 689 (Fla. 2d DCA 1979); McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976).
The defendants A/R/C and Dorner urge this court to follow the traditional rule in Florida that a professional can only be held liable for negligence in the performance of his professional duties to the party with whom he enjoys privity. The defendants, however, concede that for "justifiable policy reasons", this rule has been relaxed to allow negligence claims to be brought by parties who are not in privity with the professional in certain limited cases.
Beginning with Moyer, three areas have evolved in which privity of contract appears to no longer be an insurmountable barrier to recovery in a negligence action. In negligence claims against attorneys, Florida courts have recognized an exception to the privity rule where the intent of the client is to benefit a third party plaintiff. See McAbee (client's intended beneficiary may maintain malpractice action against attorney notwithstanding lack of privity).
A second exception has been recognized with respect to abstractors for their negligence in the preparation of an abstract. Previously, based on Sickler v. Indian River Abstracting Guaranty Co., 142 Fla. 528, 195 So. 195 (1940), only the party in privity with the abstractor could maintain a cause of action against such abstractor. In First American Title Insurance Company, Inc. v. First Title Service Co., 457 So.2d 467 (Fla. 1984), the Florida Supreme Court eliminated the privity requirement and held that a third party user who was known or should have been known (as here) to the abstractor is owed the same duty and entitled to the same remedy as the one who ordered the abstract in the first instance.
A third exception has been recognized in the construction industry as reflected in Moyer and its progeny. See Conklin v. Cohen, 287 So.2d 56 (Fla. 1973); Parliament Towers Condominium v. Parliament House Realty, Inc.; Navajo Circle, Inc. Development Concepts Corporation; Luciani v. High. See also Geer v. Bennett; Audlane Lumber & Builders Supply, Inc. v. D.E. Britt Associates, Inc., 168 So.2d 333 (Fla. 2d DCA 1964).
In Moyer, one question certified to the supreme court by the U.S. Circuit Court of Appeal could be characterized as whether a general contractor was able to maintain a direct action against the supervising architect or engineer, or both, where either or both of them were negligent in failing or refusing to provide the general contractor with final acceptance of the building project in the form of an architect's certificate upon the completion of the building and where there was an absence of direct privity of contract between the general contractor and the architect or engineer or both. This question was answered in the affirmative:
Each of the conditions would present a cause of action: (a) supervising architect or engineer is negligent in preparation of plans and specifications; (b) the supervising architect or engineer negligently causes delays in preparation of corrected plans and specifications; (c) the supervising architect or engineer negligently prepared and negligently supervised corrected plans and specifications; (d) the supervising *1277 architect or engineer negligently failed to award an architect's certificate upon completion of the project; (e) the architect or engineer was negligent in exercise of supervision and control of contractor...
285 So.2d at 402.
An annotation on Tort Liability of Project Architect for Economic Damages Suffered By Contractor appears at 65 ALR3d 249 (1975). The author, at page 252, states that
Although, under the traditional general rule, privity of contract was required before a cause of action could arise from the negligent breach of a duty existing by virtue of contract, this requirement has been gradually eliminated in many jurisdictions, at first with respect to actions for personal injuries or death, and later in regard to suits predicated upon harm to intangible economic interests. Thus, just as the privity doctrine has been widely repudiated in architect cases involving personal injury or death stemming from negligently prepared plans or designs and from negligent supervision, the courts of several jurisdictions have indicated that the doctrine cannot be applied to shield an architect from liability to a contractor who has suffered economic damage as a result of the negligence of the architect. (Footnotes omitted)
The annotation makes particular reference to an action brought in the name of the United States by a concrete supplier for a school construction project. The concrete supplier contractor counterclaimed against the project architect alleging negligence in interpreting certain concrete tests resulting in the contractor suffering damages in compensating for the defective forms and in the consequence delay in completing the work. The court in United States use of Los Angeles Testing Laboratory v. Rogers & Rogers, 161 F. Supp. 132 (S.D.Cal. 1958) held that the negligent breach by an architect of his contract with the owner gives rise to an actionable claim, sounding in tort, in favor of a stranger to the contract, including a contractor who allegedly has been damaged by the breach.
The court went on to hold that to determine whether in a specific case a defendant will be held liable to a third person not in privity courts must balance various factors including the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that he suffered injury, the closeness of the connection between the defendant's conduct and the injury, the moral blame attached to such conduct, and the policy of preventing future harm. 161 F. Supp. at 135, quoting from Biakanja v. Irving, 49 Cal.2d 647, 320 P.2d 16, 19 (Cal. 1958).
The court further stated:
[T]he power of an architect to stop the work is alone tantamount to a power of economic life or death over the contractor, and it is only just that such authority carry commensurate legal responsibility.
161 F. Supp. at 136. See Donnelly Construction Company v. Oberg/Hunt/Gilleland, 139 Ariz. 184, 677 P.2d 1292 (Ariz. 1984) (privity not necessary to maintain action by contractor against architect for negligent misrepresentations); Owen v. Dodd, 431 F. Supp. 1239 (N.D.Miss. 1977); Mayor and City Council of City of Columbus v. Clark-Dietz and Associates-Engineers, Inc., 550 F. Supp. 610 (N.D. Miss. 1982), appeal denied, 702 F.2d 67 (5th Cir.1983); Davidson and Jones, Inc. v. County of New Hanover, 41 N.C. App. 661, 255 SE.2d 580, cert. den. (N.C. App.), review denied, 259 S.E.2d 911 (N.C. 1979). See also Shoffner Industries, Inc. v. W.B. Lloyd Construction Co., 42 N.C. App. 259, 257 S.E.2d 50 (N.C. App.), cert. den., 298 N.C. 296, 259 SE.2d 301 (N.C. 1979) (contractor's claim against architect stated cause of action in negligence where claim stated that architect inspected and approved roof trusses when he knew or should have known that they were defective as to material and workmanship).
Footnote 1 of the majority opinion makes several statements which must be clarified. First, Moyer is not the lead case for the annotation. Second, the "caveat" in footnote 1, had it been set out in full by the majority, would have read:

*1278 This annotation is concerned solely with professional or licensed architects who are engaged in the construction or alteration of buildings or other structures. Not included, therefore, are cases involving, as defendants, landscape architects, civil engineers, industrial designers, building contractors, or other persons connected with the building and construction industry, even though such an individual may have incidentally performed the functions of a professional architect. As to the civil liabilities, in general, of members of various trades and vocations, see 58 Am Jur. 2d, Occupations, Trades, and Professions § 70.
65 A.L.R.3d at 250. The importance of this annotation is not so much as direct authority but to show that the very reasons which exist for extending liability under negligence theories to the project architect or supervising architect, also exist for the consulting "expert." The consulting "expert" should not be permitted to hold the sword of Damocles, dangling by a single horsehair, over the head of a contractor without concomitant responsibility and duties.
In Moyer the plaintiff was a general contractor (who was known or should have been known to the defendant) and the defendant was an (owner hired) architect. In First American the plaintiff was a third party abstract user (who was known or should have been known to the defendant) and the defendant was an (owner hired) abstractor. Sub judice the plaintiff is a subcontractor roofer (who was known or should have been known to the defendant) and the defendant a (owner hired) consultant. In each case the defendant negligently rendered a printed or written plan or a printed or written abstract or a printed or written report, the product of their expertise or employment. There is little, if any, necessity to apply a different legal principle here than in Moyer or First American.
The allegations of the amended complaint, taken as true when considering a motion for judgment on the pleadings, would support an action under either Moyer or First American.
Accordingly, I would find that the trial court erred in granting the motion for judgment on the pleadings and in entering the final judgment thereon.
NOTES
[1] The annotation in 65 A.L.R.3d 249, Tort Liability of Project Architect For Economic Damages Suffered by Contractor, cited by the dissent, addresses the problem espoused by Moyer, the lead case for the annotation. It announces a caveat in the very beginning:

This annotation is concerned solely with professional or licensed architects who are engaged in the construction or alteration of buildings or other structures.
65 A.L.R.3d at 250, n. 1. It thus clearly has no application to the facts of this case.
[2] For example, in Matthews v. Lawnlite Company, 88 So.2d 299 (Fla. 1956) a prospective purchaser of a lawn chair manufactured by Lawnlite was injured because of a defect in the chair while trying it out in a retail store. In Audlane Lumber & Builders Supply, Inc. v. D.E. Britt Associates, Inc., 168 So.2d 333 (Fla. 2d DCA 1964), cert. denied, 173 So.2d 146 (1965), the defendants had designed and manufactured truss plates which were used by plaintiff in assembling wooden trusses for resale to builders. Plaintiff suffered economic damages when the trusses failed. In Geer v. Bennett, 237 So.2d 311 (Fla. 4th DCA 1970), it was contended that the defendant architects had prepared the plans and specifications and had undertaken the responsibility of directing the contractor in regard to installation of protective guard rails in the building under construction, the absence of which caused plaintiff to fall and be injured. In Conklin v. Cohen, 287 So.2d 56 (Fla. 1973), the court accepted the rule promulgated in Geer v. Bennett, supra that an architect may be liable for negligence in designing a building or supervising its construction, resulting in injury to third persons notwithstanding the absence of privity between the architect and the injured person.
[3] Products liability deals with recourse for personal injury or property damage resulting from the use of a product. West v. Caterpillar Tractor Company, Inc., 336 So.2d 80, 84 (Fla. 1976). Moyer extended the principle to damage to economic interests, but did not eliminate the requirement that the claimant shall have suffered the injury from the use of, or his direct connection with, the "product."
[4] Commenting on Moyer, one author has stated:

While the court did permit a cause of action for an injury to a third party's economic interests caused by the negligent performance of a contract, the scope of the court's holding is uncertain. In addition to the opinion's overall restraint and ambiguity, there is language that could be interpreted to indicate that the supreme court based the architect's duty on the more general negligence approach of foreseeability of injury. Based on an analysis of the facts, however, it is probable that the scope of duty the supreme court actually espoused is narrower. Because the extremely close nexus between the general contractor and the architect gave the architect "power of economic life or death" over the contractor, a known third party, the creation of a duty of due care running from the architect to the contractor was mandated. [Footnotes omitted].
Probert, Negligence and Economic Damage: The California-Florida Nexus, 33 U.Fla.L.Rev., 485, 491 (Summer, 1981).
[5] To the contrary, the complaint indicates that the school board had earlier retained a consultant to examine the roof and had refused to pay for the work despite a favorable report by that consultant. Thus, Goldman was not dependent on this testing for payment.
[6] Other out-of-state cases cited by the dissent address problems like that in Luciani v. High, supra, and produce similar results. In Donnelly Construction Company v. Oberg/Hunt/Gilleland, 139 Ariz. 184, 677 P.2d 1292 (1984), it was alleged that the defendant architect negligently prepared plans and specifications as a result of which the successful bidder incurred additional construction costs. In Owen v. Dodd, 431 F. Supp. 1239 (N.D.Miss. 1977) and in Mayor and City Council of City of Columbus v. Clark-Dietz and Associates-Engineers, Inc., 550 F. Supp. 610 (N.D.Miss. 1982), appeal denied, 702 F.2d 67 (5th Cir.1983), the facts were similar to Donnelly. In Davidson and Jones, Inc. v. County of New Hanover, 41 N.C. App. 661, 255 S.E.2d 580, review denied, 298 N.C. 295, 259 S.E.2d 911 (1979) and Shoffner Industries, Inc. v. W.B. Lloyd Construction Co., 42 N.C. App. 259, 257 S.E.2d 50 (N.C. App.), rev. denied, 298 N.C. 296, 259 S.E.2d 301 (1979), it was also alleged that the contractor incurred additional costs because of negligently prepared plans and specifications by the architect. Those cases are inapposite to the case before us.
[7] Section 552, Restatement (Second) of Torts, (1979) states the rule of liability to be:

§ 552. Information Negligently Supplied for the Guidance of Others
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.
Comment i to this section states, in pertinent part:
Under the rule stated in Subsection (2) of this Section, when the misrepresentation is merely negligent and results in pecuniary loss, the scope of the liability is narrower. The maker of the negligent misrepresentation is subject to liability to only those persons for whose guidance he knows the information to be supplied, and to them only for loss incurred in the kind of transaction in which it is expected to influence them, or a transaction of a substantially similar kind. There is an exception, as stated in Subsection (3), when there is a public duty to give the information. [Emphasis added].