RECREATIONAL DESIGN & CONSTRUCTION, INC., a Florida Corporation, Plaintiff,

v.

WISS, JANNEY, ELSTNER & ASSOCIATES, INC., et al., Defendants.

Case No. 10–cv–21549.

United States District Court, S.D. Florida.

Sept. 20, 2011.

Thomas R. Shahady, Kopelowitz Ostrow Ferguson Weiselberg Keechl, Fort Lauderdale, FL, for Plaintiff.

Monica Theresa Cronin, David Palmer Hartnett, Hinshaw & Culbertson LLP, Miami, FL, Gregory Scott Martin, Gregory S. Martin & Associates, PA, Maitland, FL, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

ALAN S. GOLD, District Judge.

THIS CAUSE came before the Court upon Motions To Dismiss filed by three Defendants to this action. [ECF Nos. 53, 67].[1] Plaintiff Recreational Design & Construction, Inc. ("Plaintiff") filed Responses in Opposition to the Motions, [ECF Nos. 58, 68], and Defendants filed Replies in support of their Motions. [ECF Nos. 60, 69]. Oral argument was held on August 19, 2011, at 11:00 am, and the Parties made supplemental submissions to the Court following oral argument. [ECF Nos. 71, 72, 74]. For the reasons set forth below, I grant both Motions to Dismiss.

## I. BACKGROUND

This is the second time the Court has faced a Motion to Dismiss in this case. My previous Order Granting Defendants' Motion To Dismiss [ECF No. 41] provides a detailed recitation of the relevant facts. The core allegations have not changed. The facts set forth in the Amended Complaint, taken as true at this stage in the proceedings, are as follows.

Plaintiff, a construction company, contracted with the City of North Miami

---

1. Only one of the Defendants (Hazen & Sawyer, P.C.) originally moved to dismiss the Amended Complaint. [ECF No. 53]. Two additional Defendants (Wiss, Janney Elstner & Associates and John F. Duntemann) then moved to dismiss in response to an Order from the Court. [ECF Nos. 66, 67]. The arguments in the two motions to dismiss are substantially the same. [ECF No. 67, p. 1]. There are two additional Defendants to this action (B.D. Agarwal & Associates, Ltd. and Bhagwan D. Agarwal), but Plaintiff has not served either of these two Defendants. As such, the term "Defendants" as used in this Order will only refer to the three movants unless otherwise noted.

Beach ("the City"), to perform all design and construction services on a pool and water slide project. [ECF No. 47 ¶¶ 9–10]. The City separately entered into another contract with the Defendant Hazen & Sawyer ("H & S") to "review, evaluate and perform field inspections" of Plaintiff's work. [*Id.* ¶ 11]. Defendant H & S then subcontracted with Defendant Wiss, Janney Elstner & Associates ("WJE") to perform the relevant engineering assessments. [*Id.* ¶¶ 13–15]. In keeping with its contractual duties directly toward H & S and indirectly toward the City, WJE issued a report determining that the water slide was structurally unsafe and recommending repairs to the slide. [*Id.* ¶ 19]. To counter the Defendants' recommendation, Plaintiff performed its own testing of the project, which concluded that the water slide was safe and stable. [*Id.* ¶ 29].

Based on Defendants' recommendation, "the City red tagged the Project, rejected the work already performed by [Plaintiff], and halted continued performance by [Plaintiff] until such time as the issues addressed by the Defendants were resolved." [*Id.* ¶ 22]. Plaintiff reconstructed and reinstalled the water slide in April 2009 at its own cost. [*Id.* ¶ 30]. In an attempt to recover the fees incurred for that reconstruction and installation, Plaintiff brought this action against all of the engineers involved in this case. [ECF No.

1]. Notably, Plaintiff did not include the City as a Defendant to this case. The Amended Complaint contains three causes of action: (1) professional malpractice against all of the Defendants; (2) vicarious liability against Defendants H & S and WJE; and (3) negligent misrepresentation against all of the Defendants.

## II. JURISDICTION

Jurisdiction is authorized pursuant to 28 U.S.C. § 1332. Since my previous Order Granting Defendants' Motion To Dismiss [ECF No. 41], Plaintiff has added one Defendant, H & S, to the case. [ECF No. 66, p. 2]. The Parties are in agreement that the addition of that Defendant has no effect on the Court's diversity subject matter jurisdiction. [ECF No. 63].

## III. DISCUSSION

I agree with Defendants that "[n]othing of significance has changed from the Complaint to the Amended Complaint." [ECF No. 60, p. 2]. Therefore, I arrive at the same conclusion as I did in my previous Order Granting Defendants' Motion To Dismiss. [ECF No. 41]. Because the allegations in the Amended Complaint still do not satisfy the pleading requirements of the Federal Rules of Civil Procedure, I must dismiss the Plaintiff's claims once more.[2] I address each cause of action separately.

---

**2.** My review of these Motions to Dismiss is "limited to the four corners of the complaint." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir.2002). It is well established that I could additionally rely on documents referred to in the Amended Complaint, which are central to Plaintiffs claims. *Id.* In an effort to understand the true nature of the Parties' contractual relationships, I posed various questions about the underlying written agreements to the Parties during oral argument, and I asked the Parties if they preferred to have the Court convert the pending motions to dismiss into motions for summary judgment. I also directed Plaintiff to provide

a more complete copy of its contract with the City following oral argument. My primary concern was that Plaintiff incorrectly sued the engineers to the project instead of suing the City (with which Plaintiff had privity of contract). In response to this request, Plaintiff's counsel submitted a copy of a form contract that he found online, which makes various references to Virginia-a state with no relation to these Parties or this dispute. Plaintiff apparently does not have a copy of the full contract that it entered into with the City. [ECF No. 74 ¶ 4]. To avoid confusion, I base my decision in this Order on the allegations in the Amended Complaint. Nothing found in

## A. Professional Malpractice

 The elements for professional malpractice under Florida law mirror those elements for a traditional negligence claim. They are (1) duty, (2) breach, (3) causation, and (4) damages. *Moransais v. Heathman*, 744 So.2d 973, 975 n. 3 (Fla.1999).

### i. Duty

 In my previous Order Granting Defendants' Motion To Dismiss, I concluded that Plaintiff's factual allegations did not support or explain how Defendants owed Plaintiff a duty. [ECF No. 41, p. 9]. Among the grounds in support of my conclusion were the following:

> [T]here are no allegations that Defendants exercised decision-making authority over Plaintiff's responsibilities on the project; no allegations that Plaintiff and Defendants ever interacted with one another; no allegations otherwise establishing a close nexus between Plaintiff and Defendants; and no allegations that the agreement between Defendants and the City was made for the benefit of Plaintiff.
>
> [*Id.*].

A review of the Amended Complaint demonstrates that Plaintiff was quite responsive to my previous observations when it drafted the new allegations. In particular, Plaintiff now alleges the following: "the Defendants clearly held [Plaintiff's] economic life or death in their hands"; "the Defendants had communications directly with [Plaintiff] relating to the Defendants' scope of services"; "a special relationship existed between [Plaintiff] and the Defendants"; and "any professional services rendered by Defendants ... would be provided for the benefit and guidance of [Plaintiff]." [ECF No. 47 ¶¶ 18, 26].

Defendants call these new allegations "fluffy" and insufficient to support a cause of action for professional malpractice. [Hr'g Tr. Aug. 19, 2011, at 23:5]. I agree. Under the most recent pleading standards set by the Supreme Court and the Eleventh Circuit, I am required to eliminate any allegations in a complaint that are merely legal conclusions, and I am required to determine whether the remaining well-pleaded factual allegations plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009); *Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir.2010). The allegations in Plaintiff's Amended Complaint do not pass this test.

The core idea underlying Plaintiff newest allegations is that Defendants owed Plaintiff a duty because they held Plaintiff's "economic life or death" in their hands—a term of art taken from several Florida cases that I used in my previous Order Granting Defendants' Motion To Dismiss. [ECF No. 41, pp. 11, 12 n. 9 (citing *A.R. Moyer, Inc. v. Graham*, 285 So.2d 397, 401 (Fla.1973); *McElvy, Jennewein, Stefany, Howard, Inc. v. Arlington Elec., Inc.*, 582 So.2d 47, 48–50 (Fla. Dist.Ct.App.1991)) ]. But this legal conclusion (that Defendants controlled Plaintiff's economic viability) is not supported by the other allegations within the Amended Complaint. In Plaintiff's own words, Defendants were hired to evaluate Plaintiffs work and then prepare a report making *"recommendations"* for the City. [ECF No. 47 ¶ 15 (emphasis added) ]. Based on that recommendation, Plaintiff alleges that the City—not the Defendants—decided to "red tag" the slide and reject Plaintiff's work. [*Id.* ¶ 22]. Simply put, the Defen-

---

the additional documents, which Plaintiff has actually provided, gives any further support for Plaintiff's position.

dants gave suggestions to the City, and the City disapproved of Plaintiffs work.

In fact, the only thing that Plaintiff alleges Defendants had "sole decision making authority" over was the process of "making recommendations [to the City] on how to fix the alleged deficiencies." [ECF No. 47 ¶ 25]. Plaintiff could not possibly dispute that *decisions* and *recommendations* are mutually exclusive concepts. *See* THE NEW OXFORD AMERICAN DICTIONARY 438, 1415 (2d ed. 2005) (stating that the verb *decide* means to "resolve or settle" whereas the verb *recommend* means to "advise or suggest"). Nowhere does the Amended Complaint allege that Defendants resolved or settled any issue without the ultimate approval or direction of the City. Nor does the Amended Complaint allege that Defendants alone ever mandated or compelled any course of action without the City. [ECF No. 67, p. 5]. In any event, Plaintiff's assertion about Defendant's decision-making authority is a conclusory statement without further factual support, and given the other inconsistent allegations in the Amended Complaint, I find it implausible that Defendants had any authority to make binding decisions concerning the water slide project.

The same is true for Plaintiff's new allegations that it shared a "special relationship" with Defendants and that Defendants' contractual obligations toward the City somehow "benefitted" the Plaintiff. Again, Plaintiff probably employed this language in its Amended Complaint in response to my previous analysis under Florida case law that there was an insufficient "nexus" between the Parties to establish a duty from Defendants to Plaintiff. [ECF No. 41, pp. 11, 13 (citing *McElvy*, 582 So.2d at 50; *E.C. Goldman, Inc. v. A/R/C/ Assoc., Inc.*, 543 So.2d 1268, 1270 (Fla.Dist.Ct.App.1989)) ]. None of the other allegations from the Amended Complaint support the assertion that Plaintiff and Defendants shared a relationship of trust, reliance, or mutual benefit. To the contrary and as set forth in my previous Order, Plaintiff "has essentially alleged the exact opposite—namely, the Defendants were hired to *evaluate and critique* Plaintiffs work for the benefit of the City, not the Plaintiff." [ECF No. 41, p. 9]. Nothing has changed. Plaintiff's Amended Complaint still alleges that Defendants were "retained to review, evaluate and perform field inspections regarding [Plaintiff's] performance and construction of the Slide." [ECF No. 47, ¶ 11].[3]

Plaintiff's new allegation that it and the Defendants had direct interactions and were physically present at the project site at the same time adds nothing further to support Plaintiff's naked assertion that Defendants held Plaintiff's fate in their hands. [ECF No. 47 ¶ 20]. Taking this factual allegation as true, physical proximity or direct communication, in and of themselves, say nothing about the power structure between the Parties. Nor does Plaintiff provide any case law or other support for the proposition that Defendants owed Plaintiff a duty of care merely because they interacted with one another *while each independently performed their own contractual responsibilities for the City.*

In its opposition to Defendants' Motions to Dismiss, Plaintiff cites one case concerning the issue of duty under Florida law. [ECF No. 58, p. 9; ECF No. 68, p. 9; *see also* Hr'g Tr. Aug. 19, 2011, at 20:18–25]. In *A.R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla.1973), the Florida Supreme Court determined that "a third party general contractor, who may foreseeably be injured or sustained an eco-

---

3. Nor do the allegation in Plaintiff's Amended Complaint point to a single section of the contracts between the City, H & S, and WJE indicating any intent to benefit Plaintiff.

nomic loss proximately caused by the negligent performance of a contractual duty of [a professional], has a cause of action against the alleged negligent [professional], notwithstanding the absence of privity." *Id.* at 402. Plaintiffs interpretation of this excerpt from *Moyer*. "[I]f you are a supervising engineer, there is a cause of action." [Hr'g Tr. Aug. 19, 2011, at 23:23–24].

This reading of *Moyer* is overly simplistic. The professional defendant in that case was an architect whose responsibilities on the relevant project were to prepare the designs and plans for the project, approve the overall structural components or framework for the project, and supervise the general contractor's execution of those plans, including having the authority to halt the contractor's work. *Id.* at 399–401. Of great importance, the architect needed to fulfill his designing and planning responsibilities *before* the general contractor ever began carrying out those plans. This presents a critical difference from the allegations set forth in Plaintiff's Amended Complaint. Our Plaintiff admits that it alone—and not the Defendants—bore sole responsibility to plan and design the City's pool project. [ECF No. 47 ¶ 9]. According to Plaintiff, Defendants were tasked with *reviewing and evaluating* Plaintiff's work. [*Id.* ¶ 11]. Because an engineer can only assess a construction project once it exists, Defendants' duties could only have been triggered *after* Plaintiff built the slide. Even construing all of the facts in the light most favorable to the Plaintiff and assuming, for example, that the Defendants were critiquing Plaintiff's work on an ongoing

basis, Defendant's duties, by definition, were still reactionary to Plaintiff's work and not the other way around. Therefore, this case is not controlled by *Moyer*.

For all of these reasons, I conclude that the allegations from Plaintiff's Amended Complaint are insufficient to impose a duty on the Defendants as a matter of law.[4]

### ii. Breach

Plaintiff's Amended Complaint barely differs from the original Complaint in its allegations concerning breach. Plaintiff's only new allegation is that Defendants' reports were "replete with falsities and inaccuracies." [ECF No. 47 ¶¶ 41, 74, 106, 127, 148]. Without further factual description about *how* Defendants were careless in evaluating Plaintiff's work, I refer back to my analysis in the previous Order Granting Defendants' Motion To Dismiss [ECF No. 41] and conclude that Plaintiff has failed to put forward sufficient facts of breach against any of the Defendants.

### iii. Causation

Nor has very much changed between Plaintiff's allegations about causation in the original Complaint and those allegations in the Amended Complaint. Although Plaintiff now alleges that it "performed pursuant to Defendants['] recommendations, which eventually resulted in the subsequent re-construction and re-installation of the Slide," Plaintiff also admits in its Amended Complaint that the City itself—and not the Defendants—made the ultimate decision to "red tag" and "reject" Plaintiff's work. [ECF No. 47 ¶ 22]. Therefore, according to the allegations, only the City,

---

4. While I have confined my analysis in this Order to the four corners of the Amended Complaint, I also note that the documents attached to the Amended Complaint further contradict Plaintiff's conclusory allegations. For example, the agreement between the City and Plaintiff lists the City as arbiter of disputes with Plaintiff and does not vest any

power in Defendants. [ECF No. 47–1; ECF No. 53, p. 9]. Likewise, Defendant W & J did *not* direct the City to demolish the slide Plaintiff had built but merely gave an opinion that the City should not place the slide into service. [ECF No. 47–2, p. 16; *see also* Hr'g Tr. Aug. 19, 2011, at 26:19–27:18].

and not the Defendants, could have caused harm to the Plaintiff.

The Amended Complaint includes the following sentences, which warrant slightly more discussion:

> This was not a simple matter outside the chain of construction related to payment or changing a supplier; the Defendants' services affected the overall progress of the Project. Moreover, the Defendants' services affected the means and methods of performance, the critical path of the Project schedule and threatened the overall completion of the Project.

[ECF No. 47 ¶¶ 27–28].

Plaintiff probably inserted this text in an attempt to distinguish this case from the *Goldman* case (cited in my previous Order) where Florida's Fifth District Court of Appeal held that a roofer could not recover from a consultant who evaluated the roofer's work under a separate contract. That court arrived at its conclusion in part because the "defendant expert was outside the 'chain of construction.' He had nothing to do with the design or construction of the roof." *Goldman*, 543 So.2d at 1271–72.

Although the additional text in Plaintiffs new allegations mirrors certain language from *Goldman*, Plaintiff's new allegations do not distinguish our case from *Goldman* because the main point in that case remains consistent. The defendant in that case "was only hired to render an opinion to the school board as to the condition of the roof built by the plaintiff," and the court held that the same defendant's opinion could not possibly have caused harm to the plaintiff because the plaintiff was only harmed by "the school board's refusal to pay based on the opinion." *Id.* The facts alleged by Plaintiff here are exactly the same: Defendants were hired by the City, a third party, to evaluate Plaintiff's work, and Plaintiff was not harmed by Defendants' opinion but rather by the City's reliance on that opinion when the City required Plaintiff to rebuild the slide. Plaintiff's attempt to distinguish *McElvy* fails for the same reason. *See McElvy*, 582 So.2d at 49–50 ("[The defendant—architects] knew that the client, the City, would use their advice ... in reaching a final decision. They also should have known that the [plaintiffs] would be impacted by the City's final decision although any reliance by [a plaintiff] would be on the City's final decision and not on the architect's advice.").

For all of these reasons, I hold that Plaintiff has not stated a cause of action for professional malpractice against any of the Defendants.

### B. Vicarious Liability

Plaintiff has added two new counts for vicarious liability against Defendants H & S and WJE to its Amended Complaint. [ECF No. 47, pp. 9, 13]. In both counts, Plaintiff alleges that those Defendants are liable to Plaintiff for the professional malpractice of the engineers working under their direction.

This cause of action is derivative of the claims for professional malpractice discussed above. Under Florida law, "a principal cannot be held liable if the agent is exonerated." *Bankers Multiple Line Ins. Co. v. Farish*, 464 So.2d 530, 532 (Fla. 1985); *see also Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1500–01 (11th Cir.1990) ("In an action against an employer for the actions of the employee based upon the theory of vicarious liability or respondeat superior [under Florida law], the plaintiff must show liability on the part of the employee."). Because the Plaintiff has not stated a viable claim against any engineers to this case for professional malpractice, Plaintiff also fails to state a cause of action for vicarious liability against the principals or supervisors of those engineers. Thus, I dismiss Plaintiff's claims under this tort as well.

### C. Negligent Misrepresentation

 As with Plaintiff's original Complaint, Plaintiffs Amended Complaint does not state a cause of action against any of the Defendants for negligent misrepresentation. Again, Plaintiff parrots the language from the relevant statutes and case law, asserting that Defendants issued false reports, which they knew were for the benefit of Plaintiff and which Defendants knew Plaintiff would rely on. [ECF No. 47 ¶¶ 18, 26, 30]. These conclusory allegations are insufficient to survive Defendants' motions to dismiss. As discussed in my previous Order, the allegations of misrepresentation do not meet the pleading requirements from Federal Rule of Civil Procedure 9(b). *See Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993) (Cox, J., concurring); *Johnson v. Amerus Life Ins. Co.*, Case No. 05–61363, 2006 WL 3826774, at *3–4 (S.D.Fla. Dec. 27, 2006).

Nor are the allegations supported by the remainder of the facts in the Amended Complaint. Under no interpretation of the facts presented by Plaintiff could Defendants' contractual arrangement with the City possibly "benefit" Plaintiff because Defendants were tasked with evaluating the quality of Plaintiff's work. Further, under no interpretation of the facts presented by Plaintiff could Plaintiff possibly "rely" on Defendants' evaluations because those evaluations went to the City and because the evaluations only came into existence once Plaintiff completed its own construction work.[5] As Defendants correctly point out, Plaintiff by its own allegations admits that it did not rely on anything in Defendants' reports because Plaintiff independently created its own reports of its work, which expressly contradicted the results of Defendants' reports.

Thus, I must dismiss Plaintiff's claims for negligent misrepresentation.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motions To Dismiss [ECF Nos. 53, 67] are **GRANTED.**
2. All of Plaintiff's claims for professional malpractice, vicarious liability, and negligent misrepresentation against all of the Defendants are **DISMISSED WITH PREJUDICE.**[6]
3. All hearings are **CANCELLED.**
4. All other pending motions are **DENIED AS MOOT.**
5. This case is **CLOSED.**

---

5. Plaintiff's allegations do not point to a single section of the contracts between the City, H & S, and WJE indicating any intent to benefit Plaintiff or any intent that Plaintiff would rely upon the Defendants' reports.

6. As noted above, Plaintiff never served Defendants B.D. Agarwal & Associates, Ltd. and Bhagwan D. Agarwal, which would constitute independent grounds for dismissal. *See McKelvey v. AT & T Technologies, Inc.*, 789 F.2d 1518, 1520 (11th Cir.1986) ("The decision to dismiss for want of prosecution lies within the trial court's discretion and can be reversed only for an abuse of discretion.").