The UNITED STATES of America for the Use and Benefit of the LOS ANGELES TESTING LABORATORY [in No. 19487], for the Use and benefit of D. L. Holliday [in No. 19769], Plaintiff,

v.

ROGERS & ROGERS, a partnership, Charles John Rogers, Earl Granville Rogers, Fidelity and Casualty Company of New York, a corporation, Defendants.

Charles John ROGERS and Earl Granville Rogers, formerly partners doing business as Rogers & Rogers, Counterclaimants,

v.

The LOS ANGELES TESTING LABORATORY, a corporation, D. L. Holliday and H. L. Gogerty, Counterdefendants.

Civ. Nos. 19487, 19769.

United States District Court
S. D. California,
Central Division.

April 22, 1958.

Gordon, Knapp & Gill, Los Angeles, Cal., for plaintiff and counterdefendant Los Angeles Testing Laboratory.

William J. Johnston and Ben M. Shera, Los Angeles, Cal., for plaintiff and counterdefendant D. L. Holliday.

Max Tendler and Andrew J. Weisz, Los Angeles, Cal., for defendants and counterclaimants Rogers and Rogers and defendant the Fidelity & Casualty Co. of New York.

John E. Glover, Los Angeles, Cal., for counterdefendant H. L. Gogerty.

MATHES, District Judge.

These actions were brought in the name of the United States, pursuant to § 2 of the Miller Act [49 Stat. 794 (1935), 40 U.S.C.A. § 270b], by the Los Angeles Testing Laboratory and D. L. Holliday, suppliers of labor and materials for a Government school-construction project, against the partnership of Rogers and Rogers, prime contractor for the project, and its surety [see Miller Act § 1, 49 Stat. 793 (1935), 40 U.S.C.A. § 270a].

In each action the defendant prime contractor has answered and asserted a counterclaim against the plaintiff materialmen and the Government's architect for the project, the latter being brought in as an additional party counterdefendant pursuant to Rule 13(h) [Fed.R.Civ.P. 13(h), 28 U.S.C.].

Briefly put, the factual background is this. Holliday supplied transit-mix concrete for the project, and is suing for the balance due on the purchase price. The Los Angeles Testing Laboratory was designated by the Government architect and retained by the prime contractor to test and inspect the concrete, and is suing for the balance of its fee.

The prime contractor alleges in the counterclaim that certain concrete furnished by Holliday was not up to specifications; that this was not brought to the prime contractor's attention until after

the concrete had been incorporated into the building; that the furnishing and incorporation into the building of this sub-standard concrete was due to negligence on the part of one or more or all the counterdefendants; that as a result of the concrete's failure to meet specifications the architect ordered the work stopped; that in order to secure approval of the work and have the stop-work order withdrawn, corrective measures were required which, together with the consequent delay, caused substantial expense for which the prime contractor seeks judgment against the counterdefendants.

■ The counterdefendant architect now moves in the alternative for judgment on the pleadings or for summary judgment on the counterclaim. Inasmuch as various affidavits and other matters of record outside the pleadings have been presented to and considered by the court, the motion must be treated as one solely for summary judgment. Fed.R.Civ.P. 12(c).

Although not raised by any of the parties, there is confronted at the outset the question, as yet undecided in this Circuit, whether this court has jurisdiction of the prime contractor's counterclaim as against the brought-in counterdefendant architect. That claim, not being one for labor or material furnished in the performance of a contract with respect to which a payment bond is required by § 1 of the Miller Act [40 U.S.C.A. § 270a], does not arise under that Act; nor does diversity of citizenship exist between the counterclaimant contractor and the counterdefendant architect [28 U.S.C. § 1332].

■ As to the plaintiff materialmen, the counterclaim is clearly a compulsory one [Fed.R.Civ.P. 13(a)] over which this Court has jurisdiction ancillary to original jurisdiction under the Miller Act, so no independent jurisdictional ground is essential to support the counterclaim as against the materialmen. Moore v. New York Cotton Exchange, 1926, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed.

750. And the better reasoned cases hold that ancillary jurisdiction which will support a compulsory counterclaim against one or more counterdefendants also extends to additional parties counterdefendant brought in under Rule 13(h), so no independent or separate ground of federal jurisdiction is necessary as to such additional parties. United Artists Corp. v. Masterpiece Productions, Inc., 2 Cir., 1955, 221 F.2d 213; United States for Use and Benefit of Jones Contracting Co. v. Skilken, D.C.N.D.Ohio 1943, 53 F.Supp. 14; see Ciechanowicz v. Bowery Savings Bank, D.C.S.D.N.Y.1956, 19 F.R.D. 367. Contra, McNaughton v. New York Central R. Co., 7 Cir., 1955, 220 F.2d 835, 840.

The apparent holding to the contrary in Reynolds v. Maples, 5 Cir., 1954, 214 F.2d 395, 399, has been distinguished on the ground that there the court might have thought the counterclaim was not compulsory. United Artists Corp. v. Masterpiece Productions, Inc., supra, 221 F.2d at page 217, note 4. In any event, doubt is cast upon the authority of the jurisdictional holding in Reynolds v. Maples by the recent ruling of the Fifth Circuit that a cross claim under Rule 13 (g) is to be considered ancillary to the main action and so maintainable without any independent ground of federal jurisdiction. Childress v. Cook, 5 Cir., 1957, 245 F.2d 798, 802–805.

■ Accordingly I hold that this Court has jurisdiction over the counterclaim asserted against the architect, and now proceed to consider on the merits his motion for summary judgment.

The record before the Court on the pending motion establishes without contradiction that the architect was contractually obligated to the United States to prepare plans and specifications for and supervise the construction of the school building involved. This record further shows beyond dispute that under the prime contractor's agreement with the Government the architect had not only the general supervision and direction of the work, but also the authority to stop the work whenever that might be

necessary to insure specified performance.

The gravamen of the prime contractor's counterclaim as against the architect is negligent supervision: that the architect negligently construed and interpreted reports of tests on the concrete in question; that he then negligently approved bents (pre-formed structures which when hoisted into place form the skeleton of the building) made of that concrete, when in fact, as he should have known, the concrete failed to meet specifications; that he then negligently authorized or ordered incorporation of the bents into the building; that because the concrete failed to meet specifications the State agency with ultimate power of approval refused to pass the bents; that the architect then stopped the work, and the prime contractor suffered damage by reason of the cost of compensating for the defective bents and the consequent delay in completion of the contract.

The architect has joined a genuine issue of fact by denying that he was negligent. However, he urges in support of the motion for summary judgment that since no contractual relationship existed between him and the prime contractor, as a matter of law he owed the prime contractor no duty to perform the architectural services with any particular degree of care; that his duty to bring due care to the supervision and direction of the work was owed solely to the United States, the only party with whom he contracted.

Whether negligent breach by an architect of his contract with the owner gives rise to an actionable claim, sounding in tort, in favor of a stranger to the contract who was allegedly damaged by the breach, such as the prime contractor at bar, is governed by the law of California, even though this is not a diversity action, but an action arising under a law of the United States. Accord, Continental Casualty Co. v. Schaefer, 9 Cir., 173 F.2d 5, 7–8, certiorari denied, 1949, 337 U.S. 940, 69 S.Ct. 1517, 93 L.Ed. 1745; 338 U.S. 840, 70 S.Ct. 35, 94 L.Ed. 514.

California law properly rules this question, first, because the issue of the architect's liability to the prime contractor does not involve the interpretation of a federal statute and second, because all relevant events occurred in California. Continental Casualty Co. v. Schaefer, supra, 173 F.2d at pages 7–8; see Restatement, Conflict of Laws §§ 378, 379 (1934). There is no supervening federal interest here which dictates the fashioning of uniform federal law to displace the law of the State where all parties concerned reside and all material facts occurred. Cf. Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.

The California courts no longer follow the old common law rule that privity of contract must exist in order for negligent performance of a contractual duty to give rise to liability for damage to an intangible economic interest. Biakanja v. Irving, Cal.1958, 320 P.2d 16.

"The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." Biakanja v. Irving, supra, 320 P.2d at page 19.

See also Dow v. Holly Mfg. Co., Cal. 1958, 321 P.2d 736, holding the general contractor of a building liable to a remote purchaser of the property for damage caused by negligent installation of a gas heater by a subcontractor. And see 2 Harper & James, Torts 1049–1053 (1956).

Considerations of reason and policy impel the conclusion that the position and authority of a supervising archi-

tect are such that he ought to labor under a duty to the prime contractor to supervise the project with due care under the circumstances, even though his sole contractual relationship is with the owner, here the United States. Altogether too much control over the contractor necessarily rests in the hands of the supervising architect for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor. The power of the architect to stop the work alone is tantamount to a power of economic life or death over the contractor. It is only just that such authority, exercised in such a relationship, carry commensurate legal responsibility.

The fact that the architect is retained by the United States makes no difference. Indeed, this circumstance increases the need for exercise of due care by the architect in his actions affecting the contractor, because the Government usually is in an even stronger position than others to insist that the work be done strictly according to specifications and that the contractor bow to the supervision of the architect.

Additionally, it should be noted that insofar as the counterclaim alleges that the architect negligently interpreted and construed reports of tests on the concrete and then authorized the incorporation of the bents into the building, the contractor in effect asserts a claim of negligent misrepresentation by the architect, with reasonably foreseeable reliance thereon by the contractor to the latter's detriment. This is so because authorization to incorporate the bents into the building, given by the architect, who is admittedly responsible for overseeing the work of the testing laboratories and for supervising construction to assure conformity with specifications, must be taken to imply a representation, first, that the architect has inspected the bents and reviewed the tests performed on the concrete of which they were made, and second, that both the bents and the concrete therein conform to specifications.

The later cases indicate that the California courts would impose liability for such a negligent representation. Gagne v. Bertran, 1954, 43 Cal.2d 481, 487–489, 275 P.2d 15, 20–21; Restatement, Torts § 552 (1938); see also Biakanja v. Irving, supra, Cal., 320 P.2d 16; Van Meter v. Bent Construction Co., 1956, 46 Cal.2d 588, 297 P.2d 644; Prosser, Torts 541–545, especially 543–544 and notes 20–22 (2d ed.1955); 1 Harper & James, Torts § 7.6 (1956).

It appearing that a claim is stated against the architect which is actionable under the law of California, and that the counterclaim, together with the affidavits on file, present genuine issues of material fact, the architect's motion for a summary judgment must be denied.