285 So.2d 397 (1973)
A.R. MOYER, INC., Plaintiff-Appellant,
v.
John Hans GRAHAM and John Hans Graham and Associates, Defendants-Appellees.
No. 41151.
Supreme Court of Florida.
October 10, 1973.
Rehearing Denied December 11, 1973.
Robert J. Paterno, of Taylor, Brion, Buker, Hames, Greene & Whitworth, Miami, for plaintiff-appellant.
William M. Hoeveler, of Knight, Peters, Hoeveler, Pickle, Niemoeller & Flynn, Miami, for defendants-appellees.
J. Michael Huey of Smith & Moore, Tallahassee, for The Florida Assn. of the American Institute of Architects, as amicus curiae.
*398 CARLTON, Chief Justice.
Through avenues authorized by Fla. Stat., § 25.031, F.S.A., and Rule 4.61, Florida Appellate Rules, 32 F.S.A., the United States Court of Appeals, Fifth Circuit, has certified to us the following questions of law:
"I. Under Florida Law, may a general contractor maintain a direct action against the supervising Architect or Engineer, or both, for the general contractor's damages proximately caused by the negligence of the Architect or Engineer, or both, for said building project, where there is an absence of direct privity of contract between the parties.
II. Would the answer to Question I be the same if any one or all of the following circumstances were present:
(a) The Architect or Engineer, or both, were negligent in the preparation of the plans and specifications.
(b) The Architect or Engineer, or both, negligently caused delays in preparation of corrected plans and specifications.
(c) The Architect or Engineer, or both, were negligent in preparing and supervising corrected plans and specifications.
(d) The Architect or Engineer, or both, were negligent in failing and refusing to provide the general contractor with final acceptance of the building project in the form of an Architect Certificate upon the completion of the building.
(e) The Architect or Engineer, or both, undertook to exercise control and supervision over the general contractor in the performance of his duties to construct the building project.
(f) The Architect or Engineer, or both, negligently exercised control and supervision over the general contractor.
III. Under the Florida Law, may a general contractor enjoy the status of a creditor or donee beneficiary, or both, of a contract between the owner and the designing and supervising Architect or Engineer, or both, where the general contractor, under his contract with the owner, is obligated to construct the building project in accordance with the Architects-Engineers plans and specifications."
As this case is postured, our expression of opinion as to the jurisprudence of Florida is based solely upon the conclusory language set forth by the Court of Appeals, Fifth Circuit, the substance of which is as follows: on the project in question, the supervising architect or engineer was negligent in the preparation and presentation of plans, designs and specifications; this negligence was the proximate cause of damages sustained by the general contractor; there was no direct privity of contract between the supervising architect or engineer and the general contractor.
The litigants view the issues as follows: whether a supervising architect is liable for economic damages to the general contractor on a construction project, with whom he has no direct contractual relationship either (a) for negligence in the performance of his duties, or (b) for breach of the architect's contract with his employer, the owner, treating the general contractor as a third party beneficiary of that agreement.

I. Negligence Theory
The architect contends that as a professional his liability for negligence extends only to those with whom he is in privity of contract. This contention derives from Sickler v. Indian River Abstract & Guaranty Co., 142 Fla. 528, 195 So. 195 (Fla. 1940), and Investment Corporation of Florida v. Buchman, 208 So.2d 291 (2nd DCA Fla., 1968). Sickler involved a suit by the estate of A.H. Sickler against an abstracter for negligent preparation of an *399 abstract prepared for the Melbourne Steam Laundry. Relying on the abstract, Sickler lent the laundry money in exchange for a mortgage; his investment was lost when an undisclosed, pre-existing mortgage was foreclosed. The trial court sustained the abstractor's demurrer and entered final judgment in its behalf. This court affirmed on the theory that:
"[A]n abstracter'[s] ... liability is not in tort, but is contractual, and must be based upon a breach of his express or implied contract with his customer or client to furnish him with a true and correct abstract... .
The negligence or unskillfulness of an abstracter does not render him liable to the alienee, devisee, or other successor in interest employing him, or other persons with whom there is no privity of contract."
In the Investment Corporation case a firm of certified public accountants negligently prepared financial statements for a corporation; a group of investors bought substantial stock in reliance on the financial position as reported by the accountants; thereafter, the corporation went bankrupt. Suit against the accountants followed, with one count alleging "[T]hat defendants violated their duty of care to plaintiff in that defendants were negligent in the preparation of the financial statement when they knew plaintiff intended to act in reliance upon this statement." The trial court dismissed the negligence count for failure to state a cause of action. On appeal, the District Court of Appeal, Second District, felt itself compelled by Sickler to affirm; in so doing, it ruled that an accountant could not be held liable for the negligent preparation of financial statements resulting in economic loss to third parties not in privity of contract.
It is conceded by the architect that Audlane Lbr. & Bldrs. Sup. v. D.E. Britt, 168 So.2d 333 (2nd DCA, Fla. 1964) recognizes that a cause of action may exist against an architect for negligent execution of plans and specifications where a non-privity third party has sustained economic damage, but that case as well as others (discussed infra) involving personal injury are seen as "products liability" and, therefore, distinguishable cases.
The contractor maintains a viable cause of action exists, notwithstanding a lack of privity, by virtue of the following decisions: Matthews v. Lawnlite Co., 88 So.2d 299 (Fla. 1956); Mai Kai, Inc. v. Colucci, 205 So.2d 291 (Fla. 1967); Audlane Lbr. & Bldrs. Sup. v. D.E. Britt, supra; moreover it is contended that Sickler and Investment Corporation, supra, are inapplicable here because neither involved the element of direct supervision and control which extended the participation of the architect beyond mere draftsmanship. We agree that a cause of action exists.
Privity is a theoretical device of the common law that recognizes limitation of liability commensurate with compensation for contractual acceptance of risk. The sharpness of its contours blurs when brought into contact with modern concepts of tort liability. MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), is heralded not so much for its decision on the facts as for its precedential value: a case relaxing privity's strictures. In Matthews v. Lawnlite Co., supra, the Court recognized MacPherson as humane and accepted its principle as being "more in line with reason and justice."
The Audlane case, decided by the District Court of Appeal, was a natural extension of the Matthews case. Britt, an architect, designed plans and specifications for roof trusses and sold them to Anchor Lock; in turn, Anchor Lock manufactured truss plates and then sold the plans, specifications and plates to Audlane; Audlane then constructed trusses according to Britt's design, using Anchor Lock's plates. A contractor purchased the completed trusses from Audlane and used them in construction. The trusses failed and Audlane sustained *400 considerable economic loss as a result. Thereafter, Audlane brought suit against Britt for negligent preparation of the truss plans and specifications, but it was dismissed for failure to state a cause of action. In reversing the dismissal, the District Court reasoned:
"With respect to the negligence action and appellee Britt Associates' `duty', there is no magic in the generality `professional service.' The phrase `professional services' encompasses a multitude of activities which may give rise to actions on numerous theories of liability. The nature of the professional's duty, the standard of care imposed, varies in different circumstances. So, too, the extent of the duty, the delimitation of the objects of the duty, varies. In every instance duty must be defined in terms of the circumstances and the theories advanced to sustain liability. In our view the extent of appellee's duty may best be defined by reference to the forseeability of injury consequent upon breach of that duty. The complaint alleged that appellee knew that the design and specifications it prepared would be resold to and used by various fabricators. To argue that it is absolutely free of liability for negligence to these known users or consumers of its work is to disregard the half century of development in negligence law popularly thought to have originated in MacPherson v. Buick Motor Co. 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (1916) and explicitly recognized in this State in Matthews v. Lawnlite Co., Fla. 1956, 88 So.2d 299. The allegations of the complaint bring appellant within the ambit of Britt Associates' duty and the court erred in its contrary determination." (Emphasis supplied.)
Mai Kai v. Colucci, supra, further weakened privity as a limitation of liability in negligence actions. A restaurant patron brought suit against both the owner and an architect who had supervised the installation of an overhead fan after preparing appropriate plans and specifications. The fan struck the patron when a weld severed. The District Court of Appeal, Fourth District, 186 So.2d 798, affirmed a judgment in favor of the patron; on certiorari review, we implicitly recognized the viability of the cause of action against the supervisory architect, quashing and reversing only because he could not have known that the weld was imperfect (no proximate cause under the facts).
Geer v. Bennett, 237 So.2d 311 (4th DCA Fla. 1970), recognized by his Court as a comprehensive treatment of liability in the recent decision of Conklin v. Cohen, 287 So.2d 56 (Fla. Filed June 27, 1973; rehearing pending), serves as a final Florida precedent for review. A mason brought a negligence action against a supervising architect for injuries sustained at a construction site. The trial court dismissed for failure to state a cause of action. The District Court reversed after a review of cases relating to a supervising architect's liability, including Montijo v. Swift, 219 Cal. App.2d 351, 33 Cal. Rptr. 133 (1963) (physical injuries); Willner v. Woodward, 201 Va. 104, 109 S.E.2d 132 (1959) (economic damages); Erhart v. Hummonds, 232 Ark. 133, 334 S.W.2d 869 (1960) (physical injury and death); Alexander v. Hammarberg, 103 Cal. App.2d 872, 230 P.2d 399 (1951).
By recognizing the review of liability presented by Geer in our Conklin v. Cohen decision, we have linked our concept of jurisprudence to the concepts espoused in the California cases cited therein: Montijo v. Swift and Alexander v. Hammarberg, supra. This being so, it is appropriate to give careful consideration to United States v. Rogers & Rogers, 161 F. Supp. 132 (S.D.Calif. 1958). The case involved striking parallels to the instant case under certification.
An architect was under contract to the United States government to prepare plans and specifications for a project and to supervise its construction with power to stop *401 work. Concrete approved by the architect and used in the project by the contractor failed, and the contractor sustained economic damages. The ensuing litigation was complex; we are concerned only with a counter-suit by the contractor against the architect.
The contractor alleged that the architect negligently construed and interpreted tests on the concrete; that the architect negligently approved structural components creating the framework for the structure; that a governmental agency refused to accept the structure on account of the defective work approved by the architect; that the architect stopped work; that the contractor sustained considerable loss by having to compensate for the defective structure and the consequent delay in completion of the project.
The architect denied any acts of negligence; more importantly, it was argued that no contractual relationship existed between the architect and the contractor; that as a matter of law no duty of care in performance of services was owed the contractor; that the architect's duty was solely to the United States government, the only party in privity of contract. The Federal Court rejected these contentions, holding that a cause of action existed (161 F. Supp. 132 at 135, 136):
"The California courts no longer follow the old common law rule that privity of contract must exist in order for negligent performance of a contractual duty to give rise to liability for damage to an intangible economic interest. Biakanja v. Irving, Cal. 1958, 49 Cal.2d 647, 320 P.2d 16.
`The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.' Biakanja v. Irving, supra, 320 P.2d at page 19."
Thereafter, the Court said, and we agree:
"Considerations of reason and policy impel the conclusion that the position and authority of a supervising architect are such that he ought to labor under a duty to the prime contractor to supervise the project with due care under the circumstances, even though his sole contractual relationship is with the owner, here the United States. Altogether too much control over the contractor necessarily rests in the hands of the supervising architect for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor. The power of the architect to stop the work alone is tantamount to a power of economic life or death over the contractor. It is only just that such authority, exercised in such a relationship, carry commensurate legal responsibility."
We also find these law review comments instructive:
"The theory that the legal responsibility of the architect should be commensurate with his control of the construction project has resulted in expansion of liability to third parties." (footnote omitted) Lehman, Roles of Architect and Contractor In Construction Management, 6 U. of Mich. J.L. Ref. 447, 452 (1973).
"D. TO WHOM IS THE ARCHITECT LIABLE.
The architect is of course liable to his client for negligently prepared plans and specifications. The contractor hired by the client to build the structure, although not in privity with the architect, may recover *402 from the architect any extra costs resulting from the architect's negligent plans. In addition, all jurisdictions deciding the issue have held that, regardless of privity, all persons lawfully on the premises may recover from the architect for injuries to person or property due to his negligence in preparing plans and specifications if the injuries occur before the structure is completed and accepted by his client." (Emphasis supplied) (Footnotes omitted) Comment: Architect Tort Liability In Preparation of Plans and Specifications, 55 Cal.Rev. 1361, 1372 (1967).
"Privity of contract appears to have an enduring existence even though it has been subjected to relentless attacks. No purpose would be served by repeating the arguments against the doctrine. It would seem clear, however, that any court that accepts MacPherson v. Buick, as far as chattels are concerned should likewise reject the privity doctrine where structures on land are involved. No reason appears why those who design chattels and those who design structures on land should not receive the same treatment." (Footnote omitted) Bell, Professional Negligence of Architects and Engineers, 12 Vand.L.Rev. 711, 713 (1959).
From the foregoing, we are satisfied that the principle is established that a third party general contractor, who may foreseeably be injured or sustained an economic loss proximately caused by the negligent performance of a contractual duty of an architect, has a cause of action against the alleged negligent architect, notwithstanding absence of privity. The first certified question, therefore, is answered in the affirmative.
The second question presupposes the same facts as the first (supervising architect or engineer whose negligence proximately causes economic damage to contractor where privity absent) but adds more detail. Each of the conditions would present a cause of action: (a) supervising architect or engineer is negligent in preparation of plans and specifications; (b) the supervising architect or engineer negligently causes delays in preparation of corrected plans and specifications; (c) the supervising architect or engineer negligently prepared and negligently supervised corrected plans and specifications; (d) the supervising architect or engineer negligently failed to award an architect's certificate upon completion of the project; (e) the architect or engineer was negligent in exercise of supervision and control of contractor; [(f) is a repetition of (e)].

II Third Party Beneficiary Theory
The third question is whether a general contractor can be a third party beneficiary of a contract between the owner and the supervising architect or supervising engineer or both, where the general contractor, under his contract with the owner, is obligated to construct the project in accordance with the architect's-engineer's plans and specifications.
Our response begins with the following observation:
"The question whether a contract was intended for the benefit of a third person is generally regarded as one of construction of the contract. The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish." 17 Am.Jur.2d, Contracts § 304 (1964)
Without viewing the architect-owner contract, which is absent from the record, we are unable to speculate if a cause of action would exist. "While it is customary for the architect's contract to provide for supervision of the erection of the building *403 which he has designed, the nature of supervision varies from contract to contract." Allen, Liabilities of Architects and Engineers to Third Parties, 22 Ark.L.Rev. 454, 460 (1968). "It is the relevant provisions of the owner-architect contract which should be determinative of what, if any, supervision is required of the architect. In attempting to determine what supervision is undertaken the courts should not look to the owner-contractor agreement." Note: Torts-Architect's Liability in his Capacity as a Supervisor, 17 DePaul L.Rev. 439, 441 (1968).
Our review of the law suggests to us that supervision generally is undertaken for the benefit of the owner to insure that the construction is proceeding in compliance with the plans and specifications approved by the owner. In general terms, a contractor is an incidental beneficiary absent clear intent manifested in the owner-architect contract to the contrary. Exceptions may exist possibly, such as in supervision to insure compliance with safety regulations which would be for the benefit of third party construction workers; however, no exceptions are apparent in the third question as posed. The theory that a supervising architect acts as agent for the owner also militates against a third party beneficiary approach.
Accordingly, this Court is of the opinion that the first and second questions should be answered in the affirmative; the third question is answered in the negative in the absence of the owner-architect contract.
ROBERTS, ERVIN, BOYD and McCAIN, JJ., concur.
DEKLE, J., concurs in part and dissents in part with opinion.
DEKLE, Justice (concurring in part and dissenting in part):
I concur in the majority's rejection of the third party beneficiary theory asserted by a contractor against the architect through the architect's contract with the owner and therefore concur in the opinion's negative answer to the third question certified.
I respectfully dissent to the affirmative answers to the first and second questions regarding the direct tort liability of the architect to the contractor, absent a consideration or some contractual or other direct responsibility by the architect to the contractor. It is my view that Sickler and Buchman, supra, remain viable and that the other authorities cited pertaining to products liability are inapplicable to this proposition.
There may be factual situations which will support a contractor's or engineer's claim against a negligent architect directly affecting such contractor or engineer and under circumstances establishishing some reliance upon the architect and the architect's knowledge of that reliance; but to extend professional liability generally beyond the one who contracts, pays for and receives and relies upon, that professional skill is a dangerous enlargement and is unsound in my judgment. Such liability cannot be reasonably anticipated by a professional when there is no privity between the parties; neither can he guard against it under this new hind-sight approach in the pursuit of tort liability against him. It would apparently apply alike to other professionals such as lawyers, accountants and others rendering services to a designated client.
It is usually indicative of another departure from stare decisis when an opinion starts reciting at length from law reviews, trial courts and the more liberal jurisdictions, each reciting the other's authority for their new found doctrine. I view the authorities in the majority opinion as distinguishable in their several areas, consistent *404 with the limited liability within a required reasonable relationship and reliance between the architect and contractor as mentioned above.
The "sharpness of the contours," as the majority puts it, of the common law principles of privity, consideration and contract do indeed fade and, I would add, are grievously damaged, when thrown into collision here with "modern concepts of tort liability," shorn of the traditional concepts of relationship and duty owed between the parties. Such "modern concepts" are attained at the expense of applicable standards; the desired result is attained by the juggling of differing authorities in products liability and unrelated tort cases.
It is not difficult to rewrite the law if one sets out on a determined course to depart from established precedent; what is difficult is to stand fast in support of the sound principles of fundamental law, against the onslaught of new and novel theories asserted to provide economic relief to the present unfortunate litigant, from some source which appears available to tap.
The liability of the architect should follow logical and mutually agreed or reasonably implied lines of responsibility between contractor and architect, within which framework an architect's failures can then be asserted in a proper claim. Moreover, such claims can, of course, be pursued by the owner against the architect where the contractor has successfully asserted the claim or defense against the owner. Bonds are also traditionally provided for such contingencies. Neglect to agree in advance on responsibilities or to take available precautions should not be the basis for corrupting established and well founded principles of liability.
Accordingly, I respectfully dissent from the enlarged views and holdings of the majority under questions one and two.