**BLU–J, INC., Plaintiff–Appellant,**

v.

**KEMPER C.P.A. GROUP, Defendant–Appellee.**

No. 89–3687.

United States Court of Appeals, Eleventh Circuit.

Nov. 6, 1990.

---

638

Alfred M. Butzbaugh, Butzbaugh & Ryan, St. Joseph, Mich., for plaintiff-appellant.

John E. Herndon, Jr., Jeffrey A. Blaker, Hinshaw, Culbetson, Moelmann, Hoban & Fuller, Miami, Fla., for defendant-appellee.

Before KRAVITCH and ANDERSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.

ANDERSON, Circuit Judge:

## I. BACKGROUND

In 1982, appellant Blu–J, Inc. ("Blu–J") became interested in an investment opportunity in World Class, Inc. ("World Class"), a Florida corporation involved in the manufacture of specialty T–Shirts. The investment proposal called for Blu–J to lend World Class 352,000.00 dollars and for a related entity to purchase a minority stock ownership position in World Class. To facilitate this transaction, Stanley C. Johnston, president of Blu–J, sought information regarding the financial condition of World Class from Kemper C.P.A. Group ("Kemper"), the accounting firm for World Class. According to testimony adduced at trial, Paul W. Stephens, an accountant at Kemper who handled the World Class account, told Johnston that Kemper would issue good financial statements for World Class. R6–208.

Based on information from a variety of sources, including Kemper's World Class financial statements, Blu–J elected to proceed with the loan and stock purchase transaction. In 1984 World Class began to have financial difficulties which spiraled into a Chapter 11 bankruptcy proceeding in early 1985. R6–230 to 240. As a result Blu–J was unable to recover its investment in World Class. This lawsuit followed in which Blu–J claimed that its loss was caused by the allegedly erroneous and fraudulent financial statements issued by Kemper.

In its complaint, Blu–J included counts alleging negligence, gross negligence, fraud, and violations of civil RICO provisions. Blu–J also alleged that it was a third party beneficiary of Kemper's contract with World Class to provide accounting services. At the close of plaintiff's evidence, the district court directed a verdict in favor of the defendant Kemper on the negligence counts and the third party beneficiary count. The jury returned verdicts for Kemper on the fraud and civil RICO counts. The district court denied appellant's motion for a new trial. On this appeal, Blu–J argues that the district court erred in directing a verdict on the third party beneficiary count and on the two negligence counts, that the district court erred in excluding certain evidence, and that the weight of the evidence necessitates a new trial on the fraud and civil RICO counts.

## II. DISCUSSION

### A. The Directed Verdict on the Third Party Beneficiary Count

Relying on *Seaboard Sur. Co. v. Garrison, Webb & Stanaland*, 823 F.2d 434 (11th Cir.1987), Blu–J argues that the district court erred when it directed a verdict for Kemper on the third party beneficiary count. In *Seaboard Surety*, which involved a surety's attempt to recover for financial loss allegedly caused by its reliance on a faulty audit prepared for the principal, we affirmed a jury verdict finding that, although the surety was a third

party beneficiary, no breach of contract had occurred. Blu–J essentially contends that because that case was allowed to go to the jury, the district court should not have precluded jury consideration in the instant case.

*Seaboard Surety* does not stand for the proposition that the elements of a Florida third party beneficiary claim may be ignored in a professional liability case. In *Florida ex rel. Westinghouse Elec. Supply Co. v. Wesley Constr. Co.*, 316 F.Supp. 490, 495 (S.D.Fla.1970), *aff'd*, 453 F.2d 1366 (5th Cir.1972) (citing *American Sur. Co. of New York v. Smith*, 100 Fla. 1012, 130 So. 440 (1930)), the court explained that:

> In order for one to qualify as a third party beneficiary under a contract, it must be shown that the intent and purpose of the contracting parties was to confer a direct and substantial benefit upon the third party. In the absence of a clear intent to benefit the third person, he cannot sue on the contract. Where the contract is designed solely for the benefit of the formal parties thereto, a third person cannot maintain an action thereon, even though such third person might derive some incidental or consequential benefit from its enforcement.

The record in the instant case is devoid of evidence showing intent, much less clear intent, on the part of the parties to the contract, Kemper and World Class, to benefit Blu–J or other third parties. In the face of this dearth of evidence, the district court was correct in directing a verdict for Kemper on Blu–J's third party beneficiary claim.

### B. *The Directed Verdict on the Negligence Counts*

██ Under Florida law at the time of trial, Blu–J was required to show privity of contract with Kemper in order to proceed in negligence. *Investment Corp. of Florida v. Buchman*, 208 So.2d 291 (Fla.Dist. Ct.App.1968). The district court correctly recognized this and directed a verdict on the negligence claims because Blu–J had failed to demonstrate privity. R6–326.

In *Buchman*, the Florida court expressly declined to adopt the Restatement of Torts § 552 and its expansion of professional liability beyond the confines of privity. *Id.* at 295–96. However, after the trial but before this appeal reached oral argument, the Florida Supreme Court, in *First Florida Bank, N.A. v. Max Mitchell & Co.*, 558 So.2d 9 (1990), overruled the *Buchman* decision and adopted the rule from Restatement (Second) of Torts § 552 (1976).

The new rule provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for the pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

The *Max Mitchell* court thus rejected the requirement of privity and adopted the foregoing rule from the Restatement. The Florida Supreme Court also held this same rule applies to allegations of negligence and gross negligence alike. *Max Mitchell*, 558 So.2d at 14. This intervening decision of the Florida Supreme Court requires that we reverse the district court's directed verdict on the two negligence counts.[1] On remand, the district court will apply the Restatement rule pursuant to the *Max Mitchell* decision.

---

**1.** Kemper makes no contention that it was entitled to a directed verdict under the new rule.

■ Counsel for Kemper argues that the directed verdict on the negligence claims should be affirmed notwithstanding the *Max Mitchell* case, because the doctrine announced in *AFM Corp. v. Southern Bell Tel. & Tel. Co.*, 515 So.2d 180 (Fla.1987) bars Blu–J's negligence claims. *AFM* involved a tort claim against the publisher of a yellow page phone directory for economic loss caused by the publication of an incorrect telephone number. Recognizing that the plaintiff had an available cause of action for breach of contract, which it elected not to pursue, the court held that "without some conduct resulting in personal injury or property damage, there can be no independent tort flowing from a contractual breach which would justify a tort claim solely for economic losses." *Id.* at 181–82. Kemper argues that Blu–J's third party beneficiary theory, although it resulted in a directed verdict which Kemper contends should be affirmed, nevertheless is an available alternative remedy within the meaning of *AFM* that bars recovery of economic losses on a negligence theory. We reject this argument.

The *AFM* case does not stand for the proposition that the mere allegation of any alternate theory of recovery forecloses the award of economic damages in tort. Rather, the court in *AFM* merely held that a party to a contract could not recover economic damages on a tort theory in the absence of a tort independent of the breach of contract itself. *Id.* at 181. That this was the holding of *AFM* is demonstrated by the fact that the court distinguished *A.R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla.1973).

In *Moyer*, the plaintiff was a general contractor who alleged economic and other loss resulting from an architect's failure to adequately perform his contractual duties to the owner. The plaintiff advanced two alternate theories for recovery: (1) the architect was liable for negligence despite a lack of privity; and (2) that he was a third party beneficiary of the contract. Finding no contractual intent to benefit the general contractor, the court rejected the third party beneficiary theory. *Id.* at 402–03. However, the court allowed the plaintiff to recover economic loss pursuant to his negligence cause of action. *Id.* at 398–402. The *AFM* court distinguished *Moyer* on the ground "that the plaintiff was not the beneficiary, either directly or as a third-party beneficiary, of the underlying contract." *AFM*, 515 So.2d at 181. Thus, it is clear that the mere allegation of a third party beneficiary claim is not enough to trigger the *AFM* doctrine.

In the instant case, we need not address the issue whether the availability of a *valid* third party beneficiary cause of action would bar a tort recovery for economic loss. In this case, Blu–J does not have the status of a third party beneficiary, and Florida law is clear that the *AFM* doctrine does not bar Blu–J's negligence claims.

We therefore reverse the district court's directed verdict on the negligence counts and remand for proceedings consistent with this opinion and *First Florida Bank, N.A. v. Max Mitchell & Co.*, 558 So.2d 9 (Fla.1990).

### C. The District Court's Exclusion of Evidence

Blu–J argues that the district court misapplied Fed.R.Evid. 408 in excluding certain evidence. Although this evidence was relevant to the negligence counts which never reached the jury, we nevertheless consider the claim of error because our ruling will be helpful during proceedings on remand. The Rule 408 evidence included reports, depositions and other materials relating to a Michigan accounting firm's independent evaluation of whether Kemper followed generally accepted accounting methods in preparing the financial statements for World Class. The evaluation was prepared by mutual agreement of Blu–J and Kemper as part of their settlement negotiations.

■ Generally, the decision of the trial court on the admissibility of evidence is afforded considerable deference in this court. *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1446 (11th Cir.1984),

*cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985).

Fed.R.Evid. 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

In *Ramada Dev. Co. v. Rauch,* 644 F.2d 1097, 1106 (5th Cir.1981) (quoting 2 J. Weinstein & M. Berger, Weinstein's Evidence § 408[03], at 408–20 to –21 (1980)),[2] we held that the test for whether statements fall under this rule is "whether the statements or conduct were intended to be part of the negotiations toward compromise." In *Ramada Dev. Corp.,* the court affirmed the trial court's refusal to permit the introduction of an architect's report prepared to facilitate settlement negotiations. "The report was to identify arguable defects that could then be discussed in monetary terms in the negotiations." *Id.* at 1107.

█ The independent evaluation in the instant case falls squarely within the *Ramada Dev. Corp.* holding and the proscription of rule 408. This is illustrated by the

following colloquy at the Motion in Limine in which Mr. Herndon, counsel for Kemper, moved for exclusion:

> Mr. Herndon: [I]n August of '86 ... there were pre-suit settlement negotiations that were being undertaken by the parties. And in the furtherance of those negotiations, and at a time when an offer was on the table, the parties agreed to allow an accountant at a firm in Detroit, called Plante & Moran to review the materials and express his opinion regarding whether or not plaintiff had a case or not.... And he expressed an opinion, and the opinion was unfavorable. And now they have taken that witness' deposition, and they wish to offer it at trial.
>
> We take the position under rule 408 this witness' testimony is inadmissible because it was within the purview or the rubric of the settlement negotiations....
>
> The Court: Let me hear from the other side. I am not sure they disagree.
>
> Mr. Butzbaugh: Well, Your Honor, factually there was no offer on the table, never has been. That is true that we agreed to have to submit materials to him and let him review them.
>
> The Court: For what purpose?
>
> Mr. Butzbaugh: Coming up with an evaluation.
>
> The Court: For what purpose?
>
> Mr. Butzbaugh: Hopefully to promote settlement. He concluded that—
>
> The Court: So it was in connection with a compromise?
>
> Mr. Butzbaugh: It was in connection with our discussion.
>
> The Court: Your motion is well taken.

R6–47, 48. We conclude that the evidence at issue was intended to be part of negotiations toward compromise and was properly excluded by the district court.[3]

---

**2.** This case was decided before the close of business on September 30, 1981 and is thus binding precedent in this court under *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

**3.** The district court also excluded evidence regarding certain sexual and social conduct of Kemper employees offered by Blu–J to show

"negligent supervision" by Kemper management. We conclude this ruling was properly within the court's discretion given that Blu–J's case involved no claim of "negligent supervision" and the evidence was irrelevant to the claim of negligent preparation of financial statements.

### D. *The District Court's Refusal to Overturn the Jury Verdicts*

■ Finally, appellant Blu–J argues that the jury's verdicts on the fraud and civil RICO counts were against the great weight of the evidence and thus a new trial is warranted. Our review of a district court's denial of a motion for new trial is very limited. Absent an abuse of discretion, the district court's disposition of a motion for a new trial will not be disturbed on appeal, especially when that disposition was to deny the motion. *Mekdeci v. Merrell Nat. Labs.*, 711 F.2d 1510, 1513 & n. 1 (11th Cir.1983).

■ Guided by this standard of review, our review of the record indicates that there was ample evidence from which the jury could have concluded that Kemper lacked fraudulent intent, a necessary element of fraud under Florida law. *See Kramer v. Unitas*, 831 F.2d 994, 998 (11th Cir.1987). Fraudulent intent is also necessary to establish mail or wire fraud, which were the predicate acts alleged here for the civil RICO count. *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49–50 (2nd Cir.1987), *abrogated on other grounds, United States v. Indelicato*, 865 F.2d 1370, 1378–82 (2nd Cir.1989), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); 18 U.S.C.A. §§ 1341, 1343, 1961(1) (Supp.1990). Thus, the district court did not err in denying Blu–J's motion for new trial.[4]

AFFIRMED in part, REVERSED in part, and REMANDED.

---

**4.** Blu–J's claim that a new trial is necessary because the jury was unable to understand the civil RICO count is based on the allegation that the district court's instructions were too brief. This argument is wholly without merit and warrants no discussion.