668 So.2d 697 (1996)
D.I.C. COMMERCIAL CONSTRUCTION CORP., Appellant,
v.
BROWARD COUNTY, its successors and assigns, by and through its BOARD OF COUNTY COMMISSIONERS, a political subdivision of the State of Florida, Miller Meier Kenyon Cooper Architects & Engineers, Inc., n/k/a Jordan Miller and Associates, Inc., a Florida Corporation, and Williams, Russell and Johnson, Inc., a Georgia Corporation Authorized to do Business in Florida, Appellees.
No. 96-804.
District Court of Appeal of Florida, Fourth District.
February 28, 1996.
Rehearing Denied April 12, 1996.
John H. Pelzer and Joseph Livio Parisi of Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellant.
Madelyn Simon Lozano of Burd Downs & Megathan, Miami, for Appellee-Miller Meier Kenyon Cooper Architects & Engineers, n/k/a Jordan Miller and Associates, Inc.
*698 PER CURIAM.
AFFIRMED. See Casa Clara Condominium Assoc., Inc. v. Charley Toppino and Sons, Inc., 620 So.2d 1244 (Fla.1993); AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So.2d 180 (Fla.1987).
GLICKSTEIN and DELL, JJ., concur.
KLEIN, J., dissents with opinion.
KLEIN, Judge, dissenting.
The trial court dismissed the appellant contractor's complaint, which alleged professional negligence against the appellee architect, concluding that it failed to state a cause of action because of the economic loss rule. I would reverse on the basis of A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla.1973).
The claim arises out of a large construction project in which Broward County, as owner, contracted separately with the appellee, an architectural and engineering firm, and the appellant, a general contractor, for the construction of an operations center and warehouse.
In order to recover damages it sustained in the construction of this project, the contractor brought this action against the architect, alleging that the architect negligently performed its contractual duties causing the contractor economic loss. The contractor also asserted claims against the owner for breach of contract, unjust enrichment and quantum meruit, which remain pending in the trial court.
In Moyer, the eleventh circuit had asked the Florida Supreme Court, by means of a certified question, to decide whether lack of privity would bar a general contractor from suing a supervising architect for negligence, and the court answered:
[A] third party general contractor, who may foreseeably be injured or sustained an economic loss proximately caused by the negligent performance of a contractual duty of an architect, has a cause of action against the alleged negligent architect, notwithstanding absence of privity.
Id. at 402.
When the Florida Supreme Court subsequently adopted the economic loss rule in regard to services in AFM Corp. v. Southern Bell Telephone & Telegraph, Co., 515 So.2d 180 (Fla.1987), it recognized that its decision appeared to be inconsistent with Moyer, but nevertheless left the Moyer holding as an exception. Subsequently, in Casa Clara Condominium Assoc., Inc. v. Charley Toppino and Sons, Inc., 620 So.2d 1244, 1248 n. 9 (Fla.1993) it limited Moyer to its facts. In the court's most recent reference to Moyer, Airport Rent-A-Car v. Prevost Car, Inc., 660 So.2d 628, 631 (Fla.1995), it stated, in distinguishing Moyer, that the facts in the case before it were "void of supervisory responsibility" which was "pivotal" to its decision in Moyer.
The architect's contract with the owner, which was attached to the complaint, required the architect to administer the construction contract, to become familiar with the progress and quality of the work, and to determine if the work was proceeding in accordance with the contract documents. Further, the architect was required to notify the contract administrator of the contractor's failure to follow plans and specifications, to interpret the requirements of the contract documents, judge the performance thereunder by the contractor, and decide claims of the owner and the contractor relating to the execution and progress of the work.
The architect was also required to review the contractor's requests for payment, and to recommend to the owner when the payment should be made and in what amount, to determine when the project was substantially and finally completed, and to determine when final payment should be made.
Under the contracts, if there were discrepancies in measurements, the contractor was not to proceed until the architect clarified the numbers. The owner could terminate the contractor's work if the owner received written certification from the architect of the contractor's "delay, neglect, or default." The complaint also alleged, without quoting a specific contractual provision, that the architect in fact had the authority to stop the work and had done so.
*699 The contract between the architect and owner does not appear to be a standard American Institute of Architects contract. Accordingly, the dicta in the footnote in Spancrete, Inc. v. Ronald E. Frazier & Assocs, P.A., 630 So.2d 1197 (Fla. 3d DCA 1994), relied on by the architect, is not persuasive. Nor is it possible to compare the provisions of the contract in the present case with the contract in Moyer, because the Moyer court did not have the architect's contract with the owner before it. Moyer, 285 So.2d at 402.
In Moyer the court was motivated to allow the contractor's suit against the architect, who was supervising construction, because the architect's power "to stop the work alone is tantamount to a power of economic life or death over the contractor." Moyer, 285 So.2d at 401 quoting United States v. Rogers & Rogers, 161 F.Supp. 132 (S.D.Cal.1958). While the duties placed on this architect by its contract with the owner may have required a level of supervision lower than that which existed in Moyer, it cannot be said that this architect was not supervising. I believe that the contract, and the facts alleged in the complaint, which we must accept as true, show sufficient supervisory control in the architect to permit this claim to go forward under Moyer.