DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GRACE AND NAEEM UDDIN, INC.,** a Florida corporation,
Appellant,

v.

**SINGER ARCHITECTS, INC., BROWARD COUNTY,** and **ARCH INSURANCE COMPANY,**
Appellees.

No. 4D18-2972

[August 28, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John B. Bowman, Judge; L.T. Case No. 14-004946 (05) and 13-013834 CACE (02).

David R. Elder and Kerry H. Lewis of Elder & Lewis, P.A., Miami, for appellant.

Neil P. Robertson of Daniels Rodriguez Berkeley Daniels & Cruz, P.A., Coral Gables, for appellees.

MAY, J.

Whether a supervising architect owes a duty of care to a contractor hired by the county for an airport improvement project is the question asked in this appeal. The contractor argues the trial court erred in failing to apply *Moyer*[1] and granting final summary judgment for the architect. We agree and reverse.

The county entered into separate contracts with the architect and the contractor for the development of an improvement project at the Fort Lauderdale Airport. The county's contract with the architect assigned the latter with consultant and administrative duties. The county's contract with the contractor concerned the scope of work and the architect's role as a consultant and administrator.

---

[1] *A.R. Moyer v. Graham*, 285 So. 2d 397 (Fla. 1973).

As the project neared completion, the county terminated its contract with the contractor. The contractor filed suit against the county and the architect claiming breach of contract and professional negligence, respectively. The trial court consolidated the actions for discovery and trial.

The architect moved for partial summary judgment, arguing it did not owe the contractor a duty of care and the contractor could not recover contract damages in tort. The trial court granted the architect's motion, concluding the architect did not owe the contractor a duty of care in its role as the county's consultant. From that partial summary judgment, the contractor now appeals.

- *The Architect/County Contract*

The contract between the architect and the county outlined the architect's role as "CONSULTANT SERVICES FOR MISCELLANEOUS PROFESSIONAL ARCHITECT, ENGINEER, AND INTERIOR DESIGN SERVICES." The contract designated the architect as a "Consultant." Article 10.20 declared the parties' intent not to "create any rights or obligations in any third person or entity under this agreement."

Under Article 3, the "SCOPE OF SERVICES/TASKS/PHASES," the architect was responsible for: (1) visiting the site and attending construction events and meetings regularly; (2) conducting joint observations of the work with the county; (3) informing the county of the progress and quality of the work; (4) managing administrative records outlined in the contract; (5) assisting the county in determining the amounts owed to the contractor; and (6) certifying the contractor's evaluation for payment.

The architect was to:

(1) interpret and give recommendations on disputes arising between the county and contractor;

(2) recommend rejection of work not in conformity with the contract;

(3) review and act on the contractor's "shop drawings, product data and samples";

(4) coordinate with the county to review "Change Orders for Code Compliance";

2

(5) conduct site observations, make recommendations, and assist the county in determining the project's completion; and

(6) manage the finalization of the project by preparing a punch list of incomplete or work needing correction and confirm the contractor's "successful demonstration" of the project.

The architect's principal described his role as the county's "eyes and ears" for the project. He subcontracted a consulting firm to help him "run the job" because he could not dedicate more than fifteen or twenty percent of his time on the project. The scope of the consulting firm's work related to reviewing construction schedules and other administrative work.

The principal admitted he recommended the contractor's termination to the county and knew termination could happen upon his recommendation. Conversely, the county's project manager testified that although the county and architect had discussions regarding the contractor's termination, the architect never expressly recommended termination. The county's director of capital improvement and projects and contract administrator for the project described the architect as the "architect on the job," and relied on the principal's input in reviewing pay applications, change orders, time extensions, and inspection of the punch list. He added that the county paid the contractor based on the principal's recommendation.

- *The Appeal*

The contractor argues that *Moyer* recognized a professional negligence claim against an architect, who supervises a project resulting in economic damages to the contractor. Therefore, the contractor argues the trial court erred in granting partial summary judgment. The architect responds that the trial court correctly found the architect hired by the county owed no duty of care to the contractor because Florida case law does not extend the architect's duty of care to the contractor. The architect also argues the contractor cannot recover contract damages against the architect because those damages would be duplicative.

We review summary judgments de novo. *Chirillo v. Granicz*, 199 So. 3d 246, 249 (Fla. 2016). "The duty of care in a negligence action is a question of law . . . ." *Cheeks v. Dorsey*, 846 So. 2d 1169, 1171 (Fla. 2003).

"Under Florida's common law a person who is injured by another's

3

negligence may maintain an action against the other person based on that other person's violation of a duty of due care to the injured person." *Moransais v. Heathman*, 744 So. 2d 973, 975 (Fla. 1999). "A professional duty may arise in favor of a third party as a result of a matter of law . . . ." *Trikon Sunrise Assocs. v. Brice Bldg. Co.*, 41 So. 3d 315, 318 (Fla. 4th DCA 2010).

"[A] third party general contractor, who may foreseeably be injured or sustained an economic loss proximately caused by the negligent performance of a contractual duty of an architect, has a cause of action against the alleged negligent architect, notwithstanding absence of privity." *Moyer*, 285 So. 2d at 402. *Moyer* relied upon California case law that recognized the professional liability of a supervising architect to a third-party contractor.

> Altogether too much control over the contractor necessarily rests in the hands of the supervising architect for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor. The power of the architect to stop the work alone is tantamount to a power of economic life or death over the contractor.

*Id.* at 401 (quoting *United States v. Rogers & Rogers*, 161 F. Supp. 132, 136 (S.D. Cal. 1958)).

Florida courts have required the existence of "supervisory duties" or responsibilities and a "close nexus" between the architect and contractor for *Moyer* to apply. *McElvy, Jennewein, Stefany, Howard, Inc. v. Arlington Elec., Inc.*, 582 So. 2d 47, 49-50 (Fla. 2d DCA 1991); *E.C. Goldman, Inc. v. A/R/C Assocs.*, 543 So. 2d 1268, 1270-72 (Fla. 5th DCA 1989); *see also Recreational Design & Constr., Inc. v. Wiss, Janney, Elstner & Assocs.*, 867 F. Supp. 2d 1234, 1239 (S.D. Fla. 2011). When the contract does not require an architect to supervise, the architect does not perform supervisory duties, and the contractor is more removed from the architect, liability will not be imposed. *McElvy*, 582 So. 2d at 49.

The Southern District of Florida found a duty of care existed in a case involving the same plaintiff and virtually identical facts. *Grace & Naeem Uddin, Inc. v. Jacobs Facilities, Inc.*, 2012 WL 12950012, at *1-6 (S.D. Fla. June 7, 2012). There, the court determined the supervising architect/engineer may be found to have the requisite control to establish professional liability even without ultimate decision-making power. *Id.* at *5.

Upon reviewing the record in a light most favorable to the contractor, the court denied the architect/engineer's motion for summary judgment. *Id.* Applying *Moyer,* the court found that despite the architect/engineer having no decision-making authority, the nexus between it and the contractor was sufficiently strong. *Id.* The architect/engineer worked on the project together with the contractor; and, the contractor was not a subcontractor. *Id.*

Here, the contractor argues a duty of care existed because he and the architect had contracts with the county, and testimony revealed that the architect effectively controlled the project and the contractor's fate. The architect was broadly responsible for administration of the county/contractor contract and sometimes acted as the county's representative. The architect was also responsible for on-site observational duties, which were later used to certify payment.

The architect responds that it did not have final decision-making authority. The architect also argues the facts in this case are more akin to *McElvy, E.C. Goldman,* and *Recreational Design & Construction,* where the court found the consultants lacked the requisite authority and nexus to impose liability. We disagree.

Although the architect was not given absolute authority to stop work, it had the authority to recommend work stoppage. Article 5.1 provided the architect, in conjunction with the county's contract administrator, was responsible for reviewing final documentation and the architect would issue "Final Certificate of Payment." Article 5.3 provided final payment was contingent on the architect's certification.

The architect's supervisory control over the contractor was further supported by deposition testimony in which the architect's principal described himself as the "eyes and ears" of the project. Both the county's project manager and contract administrator confirmed the county's reliance on the architect in overseeing the contractor's performance.

Although the county had final authority to terminate the contractor or otherwise stop work, it relied on the architect's duty as consultant to make its ultimate determination to terminate the contractor. The architect was given near absolute authority regarding payments to the contractor, demonstrating the architect's influence over the contractor's economic vitality.

The architect's reliance on *McElvy, E.C. Goldman,* and *Recreational Design & Construction* is misplaced. Unlike the architect in *McElvy,* who

5

did not have definitive supervisory control over the contractor, here the architect had supervisory control, both de facto and de jure. And, unlike the subcontractor in *McElvy*, the contractor's status as a general contractor on the project established the requisite nexus to fall within *Moyer*.

Both *E.C. Goldman* and *Recreational Design & Construction* concerned persons other than a supervising architect. *E.C. Goldman* involved a design expert. *Recreational* involved an engineer. Neither of them supervised the project, and neither had the requisite nexus with the contractor. *See Recreational Design & Constr., Inc.*, 867 F. Supp. 2d at 1237; *E.C. Goldman*, 543 So. 2d at 1270-71.[2]

Lastly, the architect argues Article 10.20 in the county/architect contract, which declared no duty to third-party beneficiaries, eliminates any duty of care between the architect and contractor. Once again, we disagree.

In *Moyer*, our supreme court established a supervising architect's duty of care to a general contractor based on foreseeability of harm. "[A] contractor is an incidental beneficiary absent clear intent manifested in the owner-architect contract to the contrary." 285 So. 2d at 403. Because *Moyer* specifically established tort liability in the absence of any contractual privity based on foreseeability of harm, the contractor's status as a contractual beneficiary is inconsequential.

Lastly, the architect argues because the contractor seeks to recover contractual economic damages from the county, tort damages from the architect are barred. "[U]nder Florida law, a party is not permitted to recover for the same damages more than once." *Addison Constr. Corp. v. Vecellio*, 240 So. 3d 757, 762 (Fla. 4th DCA 2018). "A judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor." *Id.* (citation omitted). A party is not barred from claiming against multiple parties where there are overlapping claims. *Id.*

---

[2] The architect also relies on a per curiam decision of ours in which the dissent suggested the economic loss rule barred a contractor from pursuing economic damages in tort. *D.I.C. Commercial Constr. v. Broward County*, 668 So. 2d 697, 698 (Fla. 4th DCA 1996). Since *D.I.C. Commercial Constr.*, our supreme court has limited the application of the economic loss rule to products liability actions. *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013).

6

Here, liability has not yet been determined against either defendant. While a party may not collect the same damages twice, when the judgment is undetermined, overlapping damages claims are a "post-judgment issue." *Id.* For this reason, the architect's argument is premature.

For the foregoing reasons, we reverse and remand the case to the trial court to vacate the summary judgment in favor of the architect.

*Reversed and Remanded.*

GROSS, J., and NUTT, JAMES, Associate Judge, concur.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**